**Affirmed in Part and Reversed and Remanded in Part and Memorandum Opinion filed December 22, 2016.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-15-00633-CV

---

**RANDY L. YESKE, Appellant**

**V.**

**PIAZZA DEL ARTE, INC., SWISS INTERNATIONAL, INC. D/B/A SWISS BUILDERS, TINO BEKARDI, DAVID E. KASSAB AND PAUL GARNEY, Appellees**

---

**On Appeal from the 164th District Court
Harris County, Texas
Trial Court Cause No. 2013-46578**

---

## M E M O R A N D U M   O P I N I O N

To stop a non-judicial foreclosure on his condominium unit, appellant Randy L. Yeske filed a lawsuit against three individuals who served on the board of directors of the condominium's homeowners association and two corporations. Yeske alleged, among other things, that the homeowners association was never properly incorporated and therefore lacked authority to collect assessments or

foreclose on his unit. Yeske sought declaratory relief and also asserted numerous claims for damages against the defendants. In a series of interlocutory orders, the trial court ruled in favor of the defendants on all of Yeske's claims. The trial court then severed the homeowners association's counterclaims, making the interlocutory orders disposing of Yeske's claims final. On appeal, Yeske raises seven issues challenging the trial court's rulings and the severance of the association's counterclaims. We affirm in part and reverse and remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2001, Tino Bekardi incorporated a for-profit company called Piazza Del Arte, Inc. to develop the Piazza Del Arte Condominiums, a twelve-unit condominium project located at 5801 Winsome Lane in Houston. Bekardi's company, Swiss International, Inc. d/b/a Swiss Builders ("Swiss Builders"), completed construction on the condominiums in 2006. Piazza Del Arte, Inc. forfeited its corporate charter several years later.

On February 14, 2006, a non-profit corporation named PDA HOA 5801 Winsome was formed to operate the Piazza Del Arte Homeowners Association (the Association). Later that same year, Bekardi filed in Harris County a condominium declaration (the "Declaration") for the Piazza Del Arte Condominiums.[1]

Through foreclosure, Randy L. Yeske purchased a unit in the Piazza Del Arte Condominiums in October 2009. After purchasing the unit, Yeske "began noticing some inconsistencies in the assessments taxed against each of the unit owners." Yeske requested various documents from the Association, including the Association's "bylaws, declarations, proof of insurance, operating statements,

---

[1] Piazza Del Arte, Inc. was identified as the "Declarant" in the Declaration, and the Association was defined as "the PIAZZA DEL ARTE HOMEOWNERS ASSOCIATION, a corporation organized under the Texas Non-Profit Corporation Act for the management of the [condominium project], the membership of which consists of all of the Owners in the Project."

calculations of assessments charged to the owners, [and] detailed accounting and other pertinent documentation relevant to ownership within and operation of the alleged homeowners association." The parties dispute whether the requested documents were ever made available to Yeske.

According to Yeske, he discovered that the Association was never properly incorporated and therefore never legally existed. The parties dispute whether Yeske subsequently failed to pay his condominium assessments for 2012 and 2013. After giving Yeske notices that his assessments had not been paid, the Association's Board of Directors (the "Board") voted to proceed with a non-judicial foreclosure on Yeske's unit. At that time, Bekardi was the president of the Association, Paul Garney was the vice-president, and David E. Kassab was the treasurer. Bekardi resigned in January 2013, and Garney became president. Walter Ebarb, another unit owner, became vice-president, and Kassab remained as treasurer.

In response to the threat of foreclosure, Yeske filed this lawsuit and placed $3,100.00—representing one year's dues—in the registry of the court. In his first amended petition, Yeske sought a declaratory judgment that "Piazza Del Arte Homeowners Association, Inc. has not been organized pursuant to the statutes, codes and laws of the State of Texas, and as such is not a viable homeowners association and lacks authority to act according[ly]." Yeske also asserted numerous claims for damages against the defendants, including defamation, misappropriation of funds, wrongful foreclosure, breach of fiduciary duty, negligence, and gross negligence. Yeske also sued Bekardi for civil assault and battery and intentional infliction of emotional distress.

Kassab moved to dismiss Yeske's breach of fiduciary duty claim on the grounds that it had no basis in law. *See* Tex. R. Civ. P. 91a. On September 27,

3

2013, the trial court granted Kassab's motion after an oral hearing and awarded Kassab $700.00 in attorney's fees. After that, Yeske non-suited without prejudice his breach of fiduciary duty claims against Bekardi and Garney. Kassab then filed special exceptions to Yeske's first amended petition. The trial court granted Kassab's special exceptions on December 17, 2013, and ordered Yeske to amend his pleadings to remove any reference to "breach of fiduciary duty" and to specifically identify each allegedly defamatory statement made by Kassab.

Yeske filed a second amended petition on December 20, 2013. Ten days later, on December 30, an assumed name certificate was filed by PDA HOA 5801 Winsome notifying the Texas Secretary of State that the company was conducting business under the assumed name "Piazza Del Arte Homeowners Association."

In April 2014, the defendants filed a document titled, "Joint Traditional and No-Evidence Motions for Summary Judgment, Request for Attorney's Fees and Motion for Sanctions" and attached evidence in support of the motions. The defendants prefaced their motions with the statement that Yeske had mistakenly sued Piazza Del Arte, Inc., an entity that was "no longer valid," rather than the correct entity, PDA HOA 5801 Winsome, the "entity that is in good standing and managing the subject Homeowners Association."

In their joint summary judgment motions, the defendants sought no-evidence summary judgment on Yeske's claims for declaratory judgment, negligence and gross negligence, defamation, misappropriation of funds, wrongful foreclosure, and "other wrongdoing," as well as Yeske's claims against Bekardi for civil assault and battery and intentional infliction of emotional distress. The defendants sought traditional summary judgment on Yeske's negligence and gross negligence claims on the grounds that the defendants did not owe Yeske any duties as a matter of law and therefore Yeske lacked standing to bring these claims against them. The

4

defendants further asserted that they were entitled to traditional summary judgment on Yeske's defamation claims because: (1) Yeske could not identify one slanderous comment made by Kassab; (2) the claims were barred by the statute of limitations; (3) the allegedly defamatory statements were either not defamatory as a matter of law or were true or substantially true; and (4) a qualified privilege existed as to Kassab's statements in carrying out his duties on the Board and Yeske had no evidence that Kassab acted with malice. Finally, the defendants sought traditional summary judgment on Yeske's declaratory judgment action on the grounds that PDA HOA 5801 Winsome d/b/a Piazza Del Arte Homeowners Association is the entity operating the Association and was organized lawfully and remains "in good status" with the Texas Secretary of State. Only Kassab sought sanctions against Yeske.

Yeske moved for a continuance of the hearing on the defendants' motions, which the trial court granted. Shortly after that, the motions were set for submission on July 14. On July 7, Yeske filed a response to the motions with supporting evidence. The hearing on the defendants' motions was later reset for September 19.

On September 12, Yeske filed a supplemental response and additional evidence. Yeske asserts that he also filed a third amended petition that same day, but the file-stamped copy in the record shows that the third amended petition was filed on September 15. In the third amended petition, Yeske added allegations that the defendants' failure to properly incorporate the Association and take other actions constituted a violation of the Texas Uniform Condominium Act (the "Act" or "TUCA"). On September 16, the defendants moved to strike Yeske's supplemental response and third amended petitions.

On September 30, the trial court signed an interlocutory order granting only

the defendants' no-evidence motion for summary judgment on Yeske's defamation claims. The trial court also recessed the hearing on the summary judgment motions and ordered the parties to participate in a mediation regarding the remaining claims "before the Court rules on the remaining claims and rest of Defendants['] Motions heard on September 19, 2014."

On October 24, counterclaims were filed against Yeske by "PDA HOA 5801 Winsome d/b/a Piazza Del Arte Homeowners Association (improperly named in this lawsuit as Piazza Del Arte, Inc.)" and Garney. The counter-plaintiffs asserted claims for breach of contract, quantum meruit, and slander of title, and also sought temporary and permanent injunctive relief against Yeske.

Yeske filed objections and a response to the counterclaims, as well as an answer. Among other things, Yeske asserted that PDA HOA 5801 Winsome was a third-party intervenor, and not a counter-plaintiff as represented.[2]

In November, the defendants' remaining summary judgment claims were set for submission on December 1, 2014, along with the defendants' motion to strike Yeske's third amended petition.

On December 1, 2014, the trial court signed an "Order Granting Final Summary Judgment" in which the court granted the defendants' traditional and no-evidence motions for summary judgment "in their entirety." In the order, the trial court did not identify the specific grounds on which each claim was disposed, but ruled that Yeske take nothing against the defendants "by reason of his various causes of action" asserted against them. The court also ordered Yeske to pay the

---

[2] In the counter-claim, plaintiff/counter-defendant PDA HOA 5801 Winsome d/b/a/ Piazza Del Arte Homeowners Association stated that it was "a Texas Non-Profit Condominium Association which operates Piazza Del Arte condominiums located in Harris County, Texas and, although being sued under a misnomer as Piazza Del Arte, Inc., has made an appearance in this case."

6

defendants $7,500.00 in reasonable and necessary attorney's fees and expenses incurred in defending against Yeske's declaratory judgment claim, to be paid within thirty days from the date of the order. Additionally, the court ordered that the $3,100.00 Yeske had placed in the registry of the court was to be remitted to "PDA HOA 5801 Winsome d/b/a Piazza Del Arte Homeowners Association, the entity operating the homeowners association." The trial court denied Kassab's motion for sanctions against Yeske, and did not rule on the defendants' motion to strike Yeske's supplemental response and third amended petition.

The Association, now simply identifying itself as "Piazza Del Arte Homeowners Association," moved for traditional summary judgment on its breach of contract claim against Yeske. The Association sought $6,355.00 allegedly owed by Yeske for unpaid association dues, penalties, and expenses, and attorney's fees.

In late December 2014, Kassab, Garney, Bekardi, and Swiss Builders nonsuited their claims against Yeske. At this point, all of Yeske's claims had been disposed and the only remaining claims were those of the Association against Yeske.

On February 18, 2015, the Association filed a motion to sever its claims against Yeske, which the trial court granted on April 17, 2015. The severance made the trial court's December 1, 2014 order on the defendants' summary judgment motions final and appealable. Yeske filed a motion for new trial on May 15, 2015, which was overruled by operation of law. This appeal followed.

### ISSUES AND ANALYSIS

On appeal, Yeske raises seven issues, contending that the trial court erred by: (1) granting Kassab's Rule 91a motion to dismiss Yeske's breach of fiduciary duty claim against Kassab; (2) granting a no-evidence summary judgment as to

7

Yeske's defamation claim when there was more than a scintilla of evidence supporting it; (3) granting a traditional and no-evidence summary judgment on "various causes of action" when there was a genuine issue of material fact on the claims; (4) granting a traditional and no-evidence summary judgment on the negligence and gross negligence causes of action based on lack of standing; (5) granting a traditional and no-evidence summary judgment on causes of action not presented in the motion; (6) granting the appellees attorney's fees with summary judgment; and (7) severing the Association's claims against Yeske when they were inextricably interwoven with Yeske's claims against the Association.

## I. Kassab's Rule 91a Motion to Dismiss

In his first issue, Yeske contends that the trial court erred in granting Kassab's Rule 91a motion to dismiss Yeske's breach of fiduciary duty claim because there was a basis in law and fact for Yeske's claim. Yeske also argues that his first amended petition gave fair notice that he was alleging that Kassab owed him a fiduciary duty under section 82.103(a) of the Act.

Rule 91a allows a party, with exceptions not applicable here, to "move to dismiss a cause of action on the grounds that it has no basis in law or fact." Tex. R. Civ. P. 91a.1. We review the merits of a Rule 91a motion de novo, because the availability of a remedy under the facts alleged is a question of law. *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724–25 (Tex. 2016) (per curiam) (citing *Wooley v. Schaffer*, 447 S.W.3d 71, 75–76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). We apply the fair-notice pleading standard to determine whether the allegations of the petition are sufficient to allege a cause of action. *Wooley*, 447 S.W.3d at 76. Whether the dismissal standard is satisfied depends solely on the pleading of the cause of action. *Sanchez*, 494 S.W.3d at 724 (citing Tex. R. Civ. P. 91.a.6).

The elements of a common-law breach of fiduciary duty claim are: (1) a fiduciary relationship existed between the plaintiff and defendant; (2) a breach by the defendant of his fiduciary duty to the plaintiff; and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach. *See Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Under the Act, "each officer or member of the board of the condominium association "is liable as a fiduciary of the unit owners for the officer's or member's acts or omissions." *See* Tex. Prop. Code § 82.103(a). The Act specifically provides that an officer or director of the association is not liable to the association or any unit owner for monetary damages for an act or omission occurring in the person's capacity as an officer or director unless: (1) the officer or director breached a fiduciary duty to the association or a unit owner; (2) the officer or director received an improper benefit; or (3) the act or omission was in bad faith, involved intentional misconduct, or was one for which liability is expressly provided by statute. *Id.* § 82.103(f). A "unit owner" is a person who owns a condominium unit. *See id*. § 82.003(a)(24).

The gravamen of Yeske's first amended petition was that Kassab and the other individual defendants were members of an invalid homeowners association that was never properly incorporated as required under the Texas Property Code or as represented in the Association's Declaration and other documents. In the section of the petition titled "Breach of Fiduciary Duty," however, Yeske alleged in the alternative that he owned a condominium unit; Kassab was a director of the alleged Association; and Kassab violated his fiduciary duties as a director of the alleged Association under its corporate documents and the Texas Property Code. Yeske further alleged that Kassab engaged in "numerous acts of misconduct, negligence, gross negligence, and wronging," including: (1) receiving financial benefit by

9

allocating the Association's funds to be expended on his own condominium unit; (2) approving the payment of invoices for work done to his own property; (3) allowing an improvident expenditure of corporate funds; and (4) failing to protect the residents' Association bank accounts and allowing the misappropriation of funds. Yeske claimed that this alleged wrongdoing resulted in losses to himself and other residents.

In Kassab's Rule 91a motion to dismiss, he argued that Yeske's claims for breach of fiduciary duty have no basis in law because Kassab does not owe Yeske a fiduciary duty as a matter of law and therefore, even if the allegations in Yeske's petition were taken as true, Yeske was not entitled to relief. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." Tex. R. Civ. P. 91a.1.

In support of his motion, Kassab primarily relied on *Myer v. Cuevas*, in which the court applied general principles of corporation law to conclude that individual board members of a condominium association owed fiduciary duties only to the association, and thus did not owe a formal fiduciary duty to an individual member of the association unless a contract or other special relationship existed between them. *See* 119 S.W.3d 830, 836 (Tex. App.—San Antonio 2003, no pet.). Because the unit owner failed to allege that an informal or confidential relationship existed between himself and the board members, the court held that the unit owner lacked standing to sue the board members individually for breach of fiduciary duty. *See id.* (citing *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990) (explaining that a corporate stockholder "cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong" unless the wrongdoer violates a duty arising from a contract or

10

otherwise.")). Kassab did not argue, and *Myer* did not address, section 82.103 of the Act.

On appeal, Yeske does not claim that a common-law formal or informal fiduciary relationship exists between him and Kassab; instead, he argues that Kassab owes him fiduciary duties under section 82.103 of the Act and that the allegations in his petition gave Kassab fair notice that he was invoking the Act. Kassab responds that Yeske did not plead a violation section 82.103 as a basis for his breach of fiduciary duty claim in his first amended petition, nor did he plead some other fact or agreement between the parties that could create a fiduciary duty.[3]

Courts have held that a party is not required to specifically plead a violation of a statute so long as the factual allegations are sufficient to give the opposing party fair notice of the basis of the claim. *See, e.g.*, *Discovery Operating, Inc. v. BP Am. Prod. Co.*, 211 S.W.3d 140, 162 (Tex. App.—Eastland 2010, pet. denied); *Broom v. Brookshire Bros., Inc.*, 923 S.W.2d 57, 60 (Tex. App.—Tyler 1995, writ denied); *Ransopher v. Deer Trails, Ltd.*, 647 S.W.2d 106, 110 (Tex. App.— Houston [1st Dist.] 1983, no writ). Here, Yeske alleged in his first amended petition that: (1) Kassab, a director of the Association, owed a fiduciary duty to Yeske, a unit owner; (2) while acting as a director, Kassab allegedly engaged in acts and omissions constituting a breach of fiduciary duty; and (3) Yeske was injured by the breach or Kassab benefitted as a result of the breach. Yeske's petition and the attached Declaration also refer to the Texas Uniform

---

[3] Kassab also argues that in Yeske's response and at the hearing on the motion, Yeske did not claim that he was asserting a claim under section 82.103. Instead, Yeske argued that Kassab and the other defendants owed a fiduciary duty concerning the money collected from property owners and held by them in a constructive trust while they were acting without authority. However, Rule 91a and Sanchez instruct that the court is to consider only the pleading together with any permitted exhibits. *See* Tex. R. Civ. P. 91a.6; *Sanchez*, 494 S.W.3d at 724.

11

Condominium Act, found in Chapter 82 of the Property Code. We conclude that, although Yeske did not specifically refer to section 82.103 in his petition, Yeske's allegations that Kassab violated fiduciary duties owed to Kassab as a director of a condominium association organized pursuant to the Property Code gave Kassab sufficient notice of a fiduciary duty claim under the Act.

Nevertheless, the appellees also argue that section 82.103 of the Act does not confer a fiduciary duty to the individual unit owners, citing *Harris v. Spires Counsel of Co-Owners*, 981 S.W.2d 892 (Tex. App.—Houston [1st Dist.] 1998, no pet.), and *Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721 (S.D. Tex. 2010) (applying Texas law). Neither case stands for the broad proposition the appellees assert. *Harris* involved claims against the condominium association rather than its individual board members, and although the court mentions section 82.103 of the Act, it does not construe or rely on section 82.103 in concluding that no informal or confidential relationship existed between the association and the unit owner. *See Harris*, 981 S.W.2d at 897–98. In *Petty*, which also involved claims by unit owners against their condominium association, the court relied on *Harris* to hold that in order to impose a fiduciary duty on an association, there needed to be "some other fact or agreement between the parties that could create the fiduciary duty." *See* 702 F. Supp. 2d. at 735 (citing *Harris*, 981 S.W.2d at 898). Because the plaintiffs failed to plead any facts to support the creation of a fiduciary duty between them and the association, the court held that the plaintiffs had failed to state a claim for breach of fiduciary duty. *Id.*

In contrast, Yeske's allegations against Kassab, if taken as true, would entitle Yeske to relief under the Act. *See* Tex. Prop. Code § 82.103(a), (f). We conclude that Yeske has pleaded a claim for breach of fiduciary duty against Kassab that has a basis in law, and therefore the trial court erred in granting

Kassab's Rule 91a motion to dismiss. We sustain Yeske's first issue.

## II.     No-Evidence Summary Judgment on Yeske's Defamation Claim

In his second issue, Yeske contends that the trial court erred in granting a no-evidence summary judgment as to his defamation claim against Kassab when there was more than a scintilla of evidence to support it. Within this issue, Yeske also argues that an adequate time for discovery had not passed and the appellants failed to accurately list the challenged elements of their defamation claims.

### A.     The Summary Judgment Standards of Review

We review the trial court's grant of summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). In reviewing either a no-evidence or traditional summary judgment motion, we must take as true all evidence favorable to the non-movant and draw every reasonable inference and resolve all doubts in favor of the non-movant. *Id.* at 157; *Mendoza v. Fiesta Mart, Inc.*, 276 S.W.3d 653, 655 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

A no-evidence motion for summary judgment is essentially a motion for a pretrial directed verdict. Tex. R. Civ. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). After an adequate time for discovery, a party without the burden of proof may, without presenting evidence, seek summary judgment on the ground that there is no evidence to support one or more essential elements of the non-movant's claim or defense. Tex. R. Civ. P. 166a(i). The non-movant is required to present evidence raising a genuine issue of material fact supporting each element contested in the motion. *Id.*; *Timpte*, 286 S.W.3d at 310. We review the evidence presented in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless

13

reasonable jurors could not. *Timpte*, 286 S.W.3d at 310.

The party moving for a traditional summary judgment has the burden to show that no material fact issue exists and that it is entitled to summary judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Willrich*, 28 S.W.3d at 23. To be entitled to traditional summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

## B.    The Applicable Law on Defamation

To maintain a defamation claim, a plaintiff must prove that each defendant: (1) published a statement; (2) that was defamatory; and (3) while acting with negligence regarding the truth of the statement. *WFAA v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1988). A written statement is defamatory when a person of ordinary intelligence would interpret it in a way that tends to injure the subject's reputation and thereby expose the subject to public hatred, contempt, or ridicule, or financial injury, or to impeach the subject's honesty, integrity, virtue, or reputation. *See Neely v. Wilson*, 418 S.W.3d 52, 60 (Tex. 2013). The common law and statutes provide certain defenses and privileges to defamation claims. *Id.* at 62. For example, it is a complete defense to defamation if a statement is true or substantially true. *Id.*; *Randall's Food Mkts. v. Johnson*, 891 S.W.2d 640, 646

(Tex. 1995). In a suit brought by a private individual, truth is an affirmative defense. *Randall's Food Mkts.*, 891 S.W.2d at 646.

The common law also recognizes a qualified privilege that protects communications made in good faith on a subject in which the author has an interest or a duty to another person having a corresponding interest or duty. *See Free v. Am. Home Assurance Co.*, 902 S.W.2d 51, 55 (Tex. App.—Houston [1st Dist.] 1995, no writ); *Pioneer Concrete of Tex., Inc. v. Allen*, 858 S.W.2d 47, 49 (Tex. App.—Houston [14th Dist.] 1993, writ denied). If a conditionally privileged statement is motivated by malice, however, the privilege is lost. *Pioneer*, 858 S.W.2d at 49. Whether a qualified privilege exists is a question of law for the court. *Houston v. Grocers Supply Co.*, 625 S.W.2d 798, 800 (Tex. App.—Houston [1st Dist.] 1981, no writ).

When the defendant moves for summary judgment, the defendant has the burden to conclusively prove his affirmative defense of qualified privilege, including proving the lack of malice. *See Randalls Food Mkts.*, 891 S.W.2d at 646; *Saudi v. Brieven*, 176 S.W.3d 108, 118–19 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). In the absence of controverting proof, a defendant's affidavit is sufficient to negate actual malice. *See Saudi*, 176 S.W.3d at 119; *Gonzales v. Levi Strauss & Co.*, 70 S.W.3d 278, 283 (Tex. App.—San Antonio 2002, no pet.).

## C.   Application of the Law to Yeske's Defamation Claim

On appeal, Yeske complains that Kassab made defamatory statements to the other condominium owners concerning Yeske's alleged failure to pay his 2013 condominium dues and filed a non-judicial foreclosure action based on untrue publications in Harris County. Yeske argues that the trial court erred in granting the no-evidence summary judgment on his defamation claims against Kassab because an adequate time for discovery had not passed, the appellees failed to

15

identify the specific elements of the claim they challenged, and Yeske presented more than a scintilla of evidence that Kassab defamed him. We need not address these complaints, however, because summary judgment on Yeske's defamation claim against Kassab may be affirmed on another ground.

The trial court's final summary judgment order granted both the appellees' no-evidence and traditional motions for summary judgment "in their entirety" without specifying the grounds. In their traditional summary judgment motion, the appellees asserted that Yeske could not identify one slanderous comment made by Kassab; the defamation claims against Kassab were barred by limitations; the subject statements were either not defamatory as a matter of law or are true or substantially true; and a qualified privilege exists as to any statements made by Kassab in carrying out his duties on the Board of the Association and Yeske could not show that Kassab acted with actual malice. Although Yeske points to some evidence that Kassab made certain statements which Yeske maintains are defamatory and untrue in response to the appellees' no-evidence summary judgment motion, Yeske wholly fails to address each of the traditional summary judgment grounds raised in the motion, including Kassab's defenses.

When, as here, a summary judgment fails to specify the grounds upon which the trial court relied for its ruling, we must affirm the judgment if any of the grounds advanced is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989). Further, because Yeske does not challenge on appeal the grounds raised in the appellees' traditional summary judgment motion to defeat Yeske's defamation claims, we may affirm the summary judgment on Yeske's defamation claim against Kassab on this basis. *See Wilkinson v. USAA Fed. Sav. Bank Trust Servs.*, No. 14-13-00111-CV, 2014 WL 3002400, at *5 (Tex. App.—Houston [14th Dist.] July 1, 2014, pet. denied) (mem. op.) ("[W]hen a particular summary judgment

16

ground goes unchallenged, we affirm the judgment as to that ground.") (citing *PAS, Inc. v. Engel*, 350 S.W.3d 602, 608 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Wortham v. Dow Chem. Co.*, 179 S.W.3d 189, 202–03 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (holding that when trial court issued amended order granting summary judgment in favor of defendant on all of appellants' claims without specifying any grounds and, on appeal, appellants failed to challenge a ground, summary judgment on that ground would be affirmed). We overrule Yeske's second issue.

## III. The Trial Court's Grant of Traditional and No-Evidence Summary Judgment on "Various Causes of Action"

In his third issue, Yeske challenges the trial court's grant of traditional and no-evidence summary judgment on his "various causes of action," including accounting, defamation, assault, misappropriation of funds, negligence and gross negligence, on the grounds that fact issues exist as to these claims. Within this issue, Yeske presents two overarching complaints: (1) the trial court erred in granting summary judgment on Yeske's request for a declaratory judgment; and (2) the appellees owed Yeske statutory duties that they breached and therefore summary judgment was improper because he was entitled to bring such an action and sue for attorney's fees.

### A. Declaratory Judgment Actions

Under the Uniform Declaratory Judgments Act, "a person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations hereunder." Tex. Civ. Prac. &

17

Rem. Code § 37.004(a). A declaration may be either affirmative or negative in form and effect, and the declaration has the force and effect of a final judgment or decree. *Id*. § 37.003(b). Declaratory judgments are reviewed under the same standards as other judgments. *Id*. § 37.010. Because the appellees moved for summary judgment on Yeske's request for declaratory relief, we review the declaratory judgment by summary judgment standards. *See City of Galveston v. Tex. Gen. Land Office*, 196 S.W.3d 218, 221 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

### 1. Yeske did not present a genuine issue of material fact on whether the Association ever existed.

As explained above, Yeske sought a declaratory judgment that the Association was "not organized pursuant to the statutes, codes and laws of the State of Texas, and as such is not a viable homeowners association and lacks authority to act according[ly]." In response, the appellees moved for traditional summary judgment on Yeske's declaratory judgment action, arguing that the evidence established as a matter of law that PDA HOA Winsome d/b/a/ Piazza Del Arte Homeowners Association was the entity operating the Association and was organized lawfully and remains in "good status" with the Texas Secretary of State. The appellees also moved for no-evidence summary judgment on Yeske's request for declaratory relief, asserting that Yeske had no evidence that (1) the Association was not organized pursuant to the codes, statutes, and laws of the State of Texas, or (2) that the Association is not a viable homeowners association and lacks authority to act accordingly.

The Texas Uniform Condominium Act provides that "a condominium may be created . . . only by recording a declaration executed in the same manner as a deed by all persons who have an interest in the real property" that contains certain

information, including the name of the unit owners' association. *See* Tex. Prop. Code §§ 82.051(a), 82.055. The unit owners' association must be organized as a profit or nonprofit corporation. *See* Tex. Prop. Code § 82.101. Further, a condominium unit may not be conveyed until the Secretary of State has issued a certificate of incorporation for the association. *Id.*

Yeske contends that the appellees failed to comply with the Act because there was not a corporation named "Piazza Del Arte Homeowners Association, Inc." when the Association was purportedly created, and therefore the Association never legally existed. Because the Association failed to properly follow the legal requirements for forming a condominium homeowners association, Yeske argues, the Association "pretended that a homeowners association existed and collected monies from owners without legal authority." Consequently, Yeske argues, he was entitled to bring a declaratory judgment action against the appellees to enforce the Act. *See* Tex. Prop. Code § 82.161 (providing that if a declarant or any other person subject to the Act violates the Act, the declaration, or the bylaws, a person or class of persons adversely affected by the violation has a claim for appropriate relief and the prevailing party is entitled to reasonable attorney's fees and costs of litigation).

In their traditional summary judgment motion, the appellees presented evidence that the Association is operated by the nonprofit corporation "PDA HOA 5801 Winsome," which has been registered with the Secretary of State since 2006, and the corporation remains in good standing with the Texas Secretary of State. Yeske points to no contrary evidence. The appellees contend that Yeske confuses PDA HOA 5801 Winsome, the nonprofit entity that has always operated the Association, with Piazza Del Arte, Inc., the now-defunct for-profit entity that was initially set up to construct the condominiums. According to the appellees, this

confusion caused Yeske to sue Piazza Del Arte, Inc., believing it was the Association. Further, after Bekardi resigned as the Association's president, Kassab, Garney, and Ebarb filed the assumed name certificate in 2013 to prevent any potential confusion.

The appellees' evidence conclusively demonstrates that the Association has been legally incorporated as PDA HOA 5801 Winsome since 2006 and is the nonprofit entity that operates the Association in accordance with the Act. The burden thus shifted to Yeske to raise a genuine issue of material fact issue precluding summary judgment.

Yeske first asserts that no entity named "Piazza Del Arte Homeowners Association, Inc." was ever incorporated and empowered to collect dues or fees from Yeske, and the appellees' filing of the 2013 assumed name certificate with that name does not cure the defect. Yeske relies on section 82.101 of the Act to argue that no homeowners association for a condominium exists until a certificate of incorporation is issued by the State of Texas. *See* Tex. Prop. Code § 82.101 ("A unit owners' association must be organized as a profit or nonprofit corporation."). However, a similar argument was rejected in *Plano Parkway Office Condos. v. Bever Props., LLC*, 246 S.W.3d 188, 195 (Tex. App.—Dallas 2007, pet. denied).

In *Plano Parkway*, a condominium unit owner and lessee sought a declaration that the condominium association failed to comply with section 82.101 because it sold the unit before the association was incorporated and, therefore, the association did not legally exist and the unit was not subject to the association's bylaws or the condominium declarations. *See id.* at 190–01. After a detailed analysis of the Act, the *Plano Parkway* court concluded that "the defining event in the creation of a condominium regime is the filing of a declaration under sections 82.051(a) and 82.055 of the Texas Property Code, not the incorporation of the unit

20

owners' association." *Id.* at 195. The court further held that the unit owner was not excused from the condominium regime because the association's certificate of incorporation was not issued before the units were conveyed. *Id.*[4]

Assuming that the Association failed to comply with the Act in some way by representing itself by the name "Piazza Del Arte Homeowners Association, Inc." or some other variation which differed from its corporate name, *Plano Parkway* suggests that such a technical violation would not relieve Yeske of his obligation to pay the condominium assessments. *See id*. at 195–96. In *Plano Parkway*, the unit owner and lessee also argued that that they were excused from the condominium regime because the association's articles of incorporation provided that it "will have no members," in violation of section 82.101's requirement that all unit owners be members of the association. *See id.* The court rejected that argument as well, and determined that the legislative intent of the Act was "that the consequence of a defect in the articles of incorporation is to allow the owner to pursue 'appropriate relief' under section 82.161 . . ., not to defeat the entire condominium regime." *See id.* at 196; *see also Bever Props., LLC v. Jerry Huffman Custom Builder, L.L.C.*, No. 05-13-01519-CV, 2015 WL 4600347, at \*14 (Tex. App.—Dallas July 31, 2015, no pet.) (mem. op.) (stating that section 82.161

---

[4] Yeske dismisses the *Plano Parkway* decision, arguing that it has been superseded by a 2012 amendment to the Texas Property Code. Specifically, Yeske points to Property Code section 202.006(b), which provides that "a dedicatory instrument has no effect until the instrument is filed in accordance with this section." According to Yeske, when analyzed in combination with sections 82.051(a) and 82.101, "it leads to the conclusion that effective 2012, dedicatory instruments have no effect unless the condominium association is first incorporated." However, section 202.006 is located in a separate chapter of the Property Code concerning restrictive covenants, and Yeske points to nothing suggesting that the legislature intended this provision to override the plain language of the statutes applicable to condominium declarations in the Act. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) (stating that the primary objective in construing a statute is to give effect to the Legislature's intent as expressed in the statute's plain language and that courts must avoid adopting an interpretation that renders any part of the statute meaningless).

of the Act "creates a general cause of action for a person who is adversely affected when a person subject to the [Act] violates the [Act] or the declaration or the bylaws of a condominium regime"). Accordingly, even if the Association has failed to comply with some provision of the Act, any noncompliance would not, as Yeske argues, necessarily invalidate the condominium regime entirely. *See Plano Parkway*, 246 S.W.3d at 195–96.

Yeske acknowledges the appellees' claim that PDA HOA 5801 Winsome is the homeowners association for the Piazza Del Arte Condominiums. But, Yeske argues, only after Yeske filed his lawsuit in 2013—and just three months before filing summary judgment motions—did the appellees file an assumed name certificate "attempting to legalize the use of the name 'Piazza Del Arte Homeowners Association' as an assumed name of PDA HOA 5801 Winsome, Inc." Yeske also argues that filing an assumed name certificate cannot "shoehorn" the Piazza Del Arte Homeowners Association into an existing corporation, but even if it did, such an entity would not have been created until 2013. Years before this, Yeske asserts, the appellees attempted to collect dues as if the homeowners association was already incorporated when it was not, pointing to collection letters sent to Yeske demanding $2,700.00 and $3,100.00 for dues that included the letterhead, "Piazza Del Arte Homeowners Association, Inc."

While we agree with Yeske that filing an assumed name certificate is not equivalent to forming a new corporation, Yeske cites no authority for the proposition that the failure to file an assumed name certificate invalidates an existing corporate entity. Rather, Yeske cites to Texas Business and Commerce Code section 71.201 to argue that a company which fails to file an assumed name certificate "may not maintain in a court of this state an action or proceeding arising out of a contract or act in which an assumed named was used until an original,

22

new, or renewed certificate has been filed." *See* Tex. Bus. & Com. Code § 71.201(a). However, the statute also provides that the failure to comply "does not impair the validity of any contract or act by the [company] or prevent the [company] from defending any action or proceeding in any court of this state." *Id.* Therefore, the 2013 assumed name certificate filed by PDA HOA 5801 Winsome is not, as Yeske maintains, evidence that the Association never legally existed, or that it only legally existed after it initiated the non-judicial foreclosure on his unit.

Yeske also contends that PDA HOA 5801 Winsome is not legally incorporated because it does not comply with section 82.055 of the Act. According to Yeske, this section expressly prohibits the use of abbreviations in the formation of a condominium homeowners association such as "PDA HOA" because the Act provides that the word "condominium" must be included in the homeowners association. Section 82.055 of the Act provides, in relevant part:

> The *declaration* of a condominium must contain
>
> > (1) the name of the condominium, which must include the word "condominium" or be followed by the words "a condominium" or a phrase that includes the word "condominium," and the name of the association.

*See id.* § 82.055(1) (emphasis added). By its plain language, this provision applies to the condominium declaration, not the legal name of the corporation operating the condominium homeowners association. The Declaration for the Piazza Del Arte Condominiums complies with this requirement, providing on its first page as follows: "The formal name of the Project is 'PIAZZA DEL ARTE CONDOMINIUMS' and will be known as 'PIAZZA DEL ARTE CONDOMINIUMS.'" Yeske's argument that PDA HOA 5801 is not properly incorporated because it uses abbreviations and its name does not include the word "condominium" is not supported by the statutory language on which he relies.

23

Finally, although his argument is not entirely clear, Yeske appears to contend that his request for declaratory relief could not be disposed of on summary judgment in the appellees' favor. Yeske argues that because a declaratory judgment action "is an additional and cumulative remedy" that does not supplant any existing remedy, "treating Yeske's declaratory judgment as if it were an independent cause of action is error." Yeske maintains that he was authorized to bring a declaratory judgment action to enforce the Act and, if the prevailing party, he may recover attorneys' fees for doing so, a proposition with which we agree. As we have explained, however, Yeske is not entitled to the declaratory relief he seeks.

In summary, the thrust of Yeske's complaint is that "Piazza Del Arte Homeowners Association, Inc." purported to be a valid condominium homeowners association that was collecting and using unit owners' assessments, when no corporation by that name ever legally existed. However, the appellees have presented uncontroverted evidence that the Association has been operated by the nonprofit corporation PDA HOA 5801 Winsome since 2006, and the company remains in good standing. Yeske has presented no evidence that raises a fact issue to the contrary. Thus, the trial court's rejection of Yeske's requested declaratory relief and its judgment that PDA HOA 5801 Winsome d/b/a/ Piazza Del Arte Homeowners Association was "the entity operating the homeowners association" was not error.

## 2. Yeske failed to raise a fact issue precluding summary judgment on "various causes of action."

Yeske next argues that fact issues preclude summary judgment against him on his "various causes of action" because he presented evidence that creates a genuine issue of material fact precluding summary judgment on all of the claims

on which the appellees moved for summary judgment.

In his summary judgment response, Yeske did not address each of the appellees' grounds for summary judgment; instead, Yeske organized his arguments into three sections: (1) "Under Texas law, Condominium Association never existed"; (2) "Assumed Name Certificate fails as a matter of law"; and (3) "Defendants liable to unit owners by statute." In the third section, Yeske asserted that all of the appellees were subject to liability for violations of specific provisions of the Act and, further, that the individual board members were liable for breaches of fiduciary duty under section 82.103. Yeske's allegations were primarily supported by statements in his own affidavit. Yeske also averred that he suffered $19,657.00 in damages, and $21,750.00 in attorney's fees. Yeske concluded by asserting that he "has suffered damages for Defendants' negligence, gross negligence, defamation, misappropriation of funds, wrongful foreclosure, and attorney's fees."

On appeal, Yeske reproduces the same section of his response to assert that his evidence "unequivocally created the necessary fact issues" to preclude summary judgment on his various causes of action. In this section of his brief, Yeske does not address the evidence that he contends raises a genuine issue of material fact on each challenged element of the appellees' no-evidence summary judgment on Yeske's claims for negligence, gross negligence, defamation, misappropriation of funds, wrongful foreclosure, other wrongdoing, assault and battery, or intentional infliction of emotional distress. Indeed, Yeske does not discuss these claims at all.

Because Yeske failed to point out the evidence that raises a fact issue on each of the elements of the claims challenged in the appellees' no-evidence summary judgment motion and does not address the claims on appeal, we overrule

Yeske's third issue and affirm the trial court's grant of the appellees' no-evidence summary judgment motion on Yeske's claims of negligence, gross negligence, defamation, misappropriation of funds, wrongful foreclosure, other wrongdoing, assault and battery, and intentional infliction of emotional distress. *See Haven Chapel United Methodist Church v. Leebron*, 496 S.W.3d 893, 903 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (affirming grant of no-evidence summary judgment when appellant did not address the claims on which appellee moved for no-evidence summary judgment or direct the court to any evidence to overcome the appellee's challenges to the elements of each of the appellant's claims); *Leffler v. JP Morgan Chase Bank, N.A.*, 290 S.W.3d 384, 386–87 (Tex. App.—El Paso 2009, no pet.) ("When a ground upon which summary judgment may have been rendered, whether properly or improperly, is not challenged, the judgment must be affirmed.").

Moreover, as Yeske has failed to address the no-evidence summary judgment granted against him on his negligence and gross negligence claims, we need not consider Yeske's fourth issue in which Yeske argues that the trial court erred in granting the appellees' traditional motion for summary judgment on his negligence and gross negligence claims based on lack of standing. *See, e.g.*, *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004) (noting that if appellant fails to point to a scintilla of evidence under the no-evidence standard, "then there is no need to analyze whether [appellant's] proof satisfied the Rule 166a(c) burden).

## IV. Summary Judgment Granted on Claims Not Presented in the Appellees' Motion

In his fifth issue, Yeske contends that the trial court erred in granting a traditional and no-evidence summary judgment on claims not presented in the

26

appellees' motion. Yeske argues that the appellees wholly failed to move for summary judgment on the following claims alleged in his third amended petition: (1) defamation by Bekardi and Garney; (2) demand for accounting; (3) violation of TUCA; (4) attorney's fees for bringing TUCA claims; and (5) declaratory judgment on Yeske's TUCA claims. In response, the appellees contend that the third amended petition alleging TUCA claims was not before the trial court, but even if it were, they were entitled to summary judgment on all claims.

## A. The Timeliness of the Third Amended Petition

Yeske contends that he timely filed his third amended petition with his supplemental response to the appellees' motions on September 12, seven days before the September 19, 2014 hearing date. In support of this contention, Yeske points to the petition's certificate of service indicating that it was served on September 12, and he notes that the petition was filed before the January 2, 2015 deadline for amended pleadings contained in the court's docket control order. Yeske also argues that the trial court must have considered his third amended petition before signing the September 24, 2014 order granting a no-evidence summary judgment on Yeske's defamation claim against Kassab because the appellees moved to strike the petition as untimely, but the trial court did not rule on their motion.

A party may amend its pleadings after a motion for summary judgment is filed until seven days before trial. Tex. R. Civ. P. 63. A summary judgment proceeding is a trial within the meaning of Rule 63. *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988). However, if a party files amended pleadings within seven days before a summary judgment hearing, an appellate court will presume that the trial court granted leave to amend when the summary judgment states that all pleadings were considered, the record does not indicate that

27

an amended pleading was not considered, and the opposing party does not show surprise. *Cont'l Airlines, Inc. v. Kiefer*, 920 S.W.2d 274, 276 (Tex. 1996). Texas appellate courts apply a liberal interpretation in determining whether a trial court granted leave to late-file an amended pleading. *Wilson v. Korthauer*, 21 S.W.3d 573, 577 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

The appellees assert that Yeske's third amended petition was not timely filed because even though the certificate of service indicates that the petition was served on September 12, the electronic file stamp from the clerk's office shows that it was actually filed on September 15, less than seven days before the September 19 hearing.[5] The appellees argue that leave to file the untimely pleading cannot be presumed because (1) the trial court's order indicates that the trial court did not consider the amended petition, and (2) the appellees demonstrated surprise.

### 1. *The trial court's order*

The appellees contend that the language in the final summary judgment order shows that the trial court did not consider Yeske's petition because it reflects that the trial court considered only the "pleadings . . . properly before the Court . . . ." *See John C. Flood of DC, Inc. v. SuperMedia, L.L.C.*, 408 S.W.3d 645, 654 (Tex. App.—Dallas 2013, pet. denied) ("By reciting that it considered the

---

[5] In his reply brief, Yeske argues for the first time that documents attached to appellate brief show that Yeske electronically filed his supplemental response and third amended petition on the same day, but the petition was file-stamped at a later date because the district clerk rejected the original submission. In support of this claim, Yeske points to documents attached to his appellate brief. Yeske also argues that under Rule 21(5) of the Texas Rules of Civil Procedure, his third amended petition was deemed filed on September 12. However, Yeske may not raise a new issue in his reply brief that was not discussed in his original brief, even if the new issue is raised in response to a matter in the appellee's brief but not raised in the appellant's original brief. *See, e.g.*, *Marsh v. Livingston*, No. 14-09-00011-CV, 2010 WL 1609215, at *4 (Tex. App.—Houston [14th Dist.] Apr. 22, 2010, pet. denied) (mem. op.). Further, this court cannot consider documents attached to an appellate brief that are not contained in the appellate record. *See WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 465 n.23 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). We therefore do not address this issue.

"timely filed" pleadings, not "all of the pleadings," the trial court indicated it did not consider appellants' amended answer in the course of deciding appellee's summary judgment motions."); *Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 323 (Tex. App.—Houston [1st Dist.] 1995, no writ) (trial court did not grant leave to file pleadings late where summary judgment order stated that court considered "*prior* pleadings referenced in the motion for summary judgment").

The trial court's order recites: "The Court, having considered the aforesaid motions, as well as the pleadings, affidavit(s), discovery responses, if any, exhibits *and other summary judgment evidence properly before the Court*" grants the appellees' summary judgment motions (emphasis added). The phrase "properly before the court" immediately follows "other summary judgment evidence," rather than the list of items that includes the pleadings. "It is a general rule of grammar that modifying words or phrases are presumed to apply to the words or phrases that immediately precede them and not to those more remote." *See Note Inv. Grp., Inc. v. Assocs. First Capital Corp.*, 478 S.W.3d 463, 479–80 (Tex. App.—Beaumont 2015, no pet.) (collecting authorities). Applying this rule, the phrase "properly before the court" modifies only "other summary judgment evidence," not the more remote "pleadings." Therefore, the order reflects that the trial court considered "the pleadings" on file, and it is undisputed that the third amended petition was on file prior to the hearing.

Even if "properly before the court" were read to modify "pleadings," the trial court could have determined that the petition was properly filed, given that it did not grant the appellees' motion to strike the petition. Further, the language in the order that Yeske shall take nothing "by reason of his various causes of action" suggests that the trial court intended to grant summary judgment on all of Yeske's

claims, including those asserted in his third amended petition. Thus, nothing in the record indicates that Yeske's third amended pleading was not considered. *See Kiefer*, 920 S.W.2d at 276.

### 2. *Prejudice and surprise*

The appellees next contend that they were "clearly prejudiced and surprised" by the third amended petition because "a pleading is facially prejudicial if it asserts new claims not previously pleaded." According to the appellees, because they objected to the amendment as prejudicial, "prejudice has been demonstrated." As support for this contention, the appellees cite *G.R.A.V.I.T.Y. Enterprises, Inc. v. Reece Supply Company*, 177 S.W.3d 537, 544 (Tex. App.—Dallas 2005, no pet.), and *Stephenson v. Leboeuf*, 16 S.W.3d 829, 839 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). But neither case holds that a pleading is automatically prejudicial on its face as a matter of law merely because it asserts a new cause of action. *See G.R.A.V.I.T.Y.*, 177 S.W.3d at 543 (holding that trial court had discretion to grant motion to strike appellant's second amended petition when appellant did not dispute that it was prejudicial on its face, the petition was untimely under the scheduling order, and it was objected to by appellee); *Stephenson*, 16 S.W.3d at 839 ("Merely because an amended pleading asserts a new cause of action, however, does not make it prejudicial to the opposing party as a matter of law."). Further, although Yeske did not allege that the appellees' conduct constituted statutory violations of TUCA until the third amended petition, his pleadings and summary judgment responses reflect that his claims were based on the appellees' alleged failure to comply with various TUCA provisions. Therefore, the appellees have not demonstrated surprise as a matter of law.

Because the summary judgment order reflects that all pleadings were considered, the record does not indicate that Yeske's third amended petition was

not considered, and the appellees have not shown surprise, we presume that the trial court granted Yeske leave to amend his pleadings and considered the third amended petition.

### B. Summary Judgment on All of Yeske's Claims was Error

Yeske next contends that the appellees did not move for summary judgment on the following claims: (1) defamation by Bekardi and Garney; (2) demand for accounting; and (3) statutory claims, declaratory judgment, and attorney's fees under TUCA. Therefore, Yeske asserts, the appellees were not entitled to summary judgment on those claims. In response, the appellees assert that even if the trial court considered Yeske's third amended petition alleging TUCA violations, summary judgment as to these claims was proper.

As a general rule, a party may not be granted judgment on a cause of action not addressed in a Rule 166a(c) summary judgment proceeding. *See Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013) (per curiam); Similarly, the no-evidence summary judgment rule "requires that the moving party identify the grounds for the motion." *Timpte*, 286 S.W.3d at 310. The portion of a final summary judgment rendered on the plaintiff's entire case under these circumstances must generally be reversed because the judgment grants more relief than requested. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001); *Dubose v. Worker's Med., P.A.*, 117 S.W.3d 916, 922 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

This court has recognized limited exceptions to the general rule when (1) the movant has conclusively proved or disproved a matter that would also preclude the unaddressed claim as a matter of law, or (2) when the unaddressed claim is derivative of the addressed claim and the movant proved its entitlement to summary judgment on the addressed claim. *See Engel*, 350 S.W.3d at 609–10;

31

*Dubose*, 117 S.W.3d at 922. The application of an exception requires "a very tight fit" between what was proved or disproved in the motion and what elements must be proved or disproved for the unaddressed claim. *Engel*, 350 S.W.3d at 610 (citing *Wilson v. Davis*, 305 S.W.3d 57, 73 (Tex. App.—Houston [1st Dist.] 2009, no pet.)).

### 1. Defamation against Bekardi and Garney

Yeske asserts that the appellees moved for no-evidence summary judgment only as to Yeske's claims of defamation against Kassab, and therefore are not entitled to summary judgment on his defamation claims against Bekardi and Garney. The appellees' no-evidence motion challenged the following elements of Yeske's defamation claims:

> [A]fter an adequate period of discovery, Plaintiff has been unable to produce, and will not be able to produce, evidence sufficient to raise a genuine issue of material fact as to these challenged elements: (1) that any of the Defendants actually published a statement; (2) that any alleged statements which were published were defamatory concerning the Plaintiff; and/or (3) that Defendants acted with negligence regarding the truth of the statement. Moreover, as to Defendant David Eric Kassab, Plaintiff cannot put forth evidence sufficient to raise a genuine issue of material fact that David Eric Kassab published any allegedly defamatory statements with actual malice.

The appellees properly identified each challenged element of Yeske's defamation claims against all of the "Defendants"—which would include Bekardi and Garney—and asserted an additional defense specific to Kassab. *See Timpte*, 286 S.W.3d at 310; *Lampasas v. Spring Ctr., Inc.*, 988 S.W.2d 428, 436 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Because Yeske offered no evidence to support his defamation claims against Bekardi and Garney, the trial court did not err by granting summary judgment on those claims. *See Wilkinson*, 2014 WL 3002400, at *5; *Wortham*, 179 S.W.3d at 202–03.

## 2. *Demand for Accounting*

Yeske claims that he alleged a demand for an accounting in both his second and third amended petitions, in which he requested that "the Association provide access to all of its financial books and financial records and to provide a full and accurate accounting of all funds deposited and expended allegedly on behalf of the owners of property located at 5801 Winsome Lane, Houston, Texas, from January 2006 to present." Additionally, in Yeske's third amended petition, he alleges that "the Defendants have wholly failed to abide by the provisions of TUCA, including but not limited to obtaining annual audits, keeping true books, and fail[ing] to make financial records, other records or annual audits available" to Yeske, causing him to incur attorney's fees and expenses for which he is entitled to recover under section 82.161 of the Act.

An accounting may be a particular remedy sought in conjunction with another cause of action or it may be a suit in equity. *Lewis v. Xium Corp.*, No. 07-08-0219-CV, 2009 WL 1953419, at *5 (Tex. App.—Amarillo July 8, 2009, pet. denied) (mem. op.). In a suit for an accounting, the general rule requires that the right to an accounting must first be determined and, if found, reference for an account should be ordered. *Advert. & Policy Comm. of the Avis Rent A Car Sys. v. Avis Rent A Car Sys.,* 780 S.W.2d 391, 400 (Tex. App.—Houston [14th Dist.] 1989), *vacated and remanded due to settlement*, 796 S.W.2d 707 (Tex. 1990). To be entitled to an accounting, a plaintiff usually must have a contractual or fiduciary relationship with the party from which the plaintiff seeks the accounting. *T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).

The appellees contend that Yeske's request for an accounting is "not a separate cause of action but rather a remedy sought." *See Shields v. Ameriquest*

*Mortg. Co.*, No. 05-06-01647, 2007 WL 3317533, at *2 (Tex. App.—Dallas Nov. 9, 2007, no pet.) (mem. op.). Because the claims underlying Yeske's request for an accounting were appropriately dismissed, the appellees assert, Yeske is not entitled to this relief. The appellees' argument overlooks Yeske's separate allegations under the section of his third amended petition on "Violations of Texas Uniform Condominium Act" in which he alleged that he is entitled to statutory relief as provided in the Act. *See Plano Parkway*, 246 S.W.3d at 196. The appellees' summary judgment motion did not address the accounting-related TUCA claims alleged in Yeske's third amended petition; therefore, summary judgment was improper on those claims. Moreover, to the extent that Yeske requests an accounting as a remedy for Yeske's alleged TUCA violations, the determination of whether an accounting would be an appropriate remedy must await the determination of the liability issues. *See Shields*, 2007 WL 3317533, at *2.

### 3.    Other TUCA Claims

In addition to the accounting-related TUCA claims in Yeske's third amended petition, Yeske alleged that the Association never existed and therefore collected monies from owners without legal authority in violation of TUCA. Moreover, as the appellees acknowledge, Yeske argued in his summary judgment response that: each of the appellees owed him statutory duties under the Act; appellees Kassab, Bekardi, and Garney owed him fiduciary duties under section 82.103 of the Act; and the appellees violated several specific sections of the Act. It is undisputed that the appellees did not move for summary judgment on Yeske's TUCA claims, but they contend that any TUCA claim alleged in Yeske's third amended petition is derivative of or otherwise encompassed by the summary judgment on Yeske's declaratory judgment and negligence claims.

Concerning Yeske's TUCA claim that the Association was never legally

incorporated and never existed, we agree with the appellees that this claim was disposed of by the summary judgment on Yeske's declaratory judgment action. As discussed above, the appellees moved for summary judgment on Yeske's request for declaratory relief and conclusively demonstrated that the Association was properly incorporated and in existence. Because the crux of Yeske's TUCA claim and request for declaratory relief was that the Association never legally existed, summary judgment was properly granted on this alleged violation of TUCA. *See Dubose*, 117 S.W.3d at 922.

Concerning Yeske's claims relating to the appellees' failure to properly keep the Association's records and make the records available to Yeske, the appellees contend that they addressed this claim by moving for summary judgment on Yeske's negligence claim, which was based, at least in part, on allegations that the appellees failed "to render an accounting or to allow plaintiff access to its financial records" and "to protect the residents' Association bank accounts." Therefore, the appellees assert, this portion of Yeske's TUCA claim was "necessarily encompassed under the previously asserted and addressed negligence claim," citing *Wortham v. Dow Chemical Company*. *See* 179 S.W.3d at 202. In *Wortham*, this court held that because Dow's first summary judgment motion challenged the Worthams' ability to bring forth any evidence of a duty owed or breached in support of their negligence claims, the trial court's judgment was sufficiently broad enough to encompass the Worthams' later-pleaded negligence claims. *Id.*

Unlike *Wortham*, the appellees do not argue that Yeske failed to present evidence on an element common to both his negligence claims and his TUCA claims; instead, the appellees argue that because Yeske's negligence claim was based on the same allegations on which the TUCA claim is based, summary judgment on the negligence claim also disposes of the TUCA claim. In *PAS, Inc. v.*

*Engel*, this court rejected a similar argument that summary judgment on a fraud claim also encompassed an unaddressed breach of fiduciary duty claim merely because summary judgment was proper on the negligence claim and both claims arose from the "same set of facts." *See* 350 S.W.3d at 610. The court instead looked to the elements of each claim and concluded that, because the fiduciary duty claim did not require evidence of the same element on which the negligence claim was disposed, summary judgment on the fraud claim did not preclude the fiduciary duty claim. *See id.* (stating that a claim for breach of fiduciary duty, unlike a fraud claim, does not require a plaintiff to establish reliance and holding that "the fact that at-will employment precludes PAS from establishing justifiable reliance for purposes of its fraud claim on alleged statements by Engel regarding future employment with PAS, . . . does not bar its breach of fiduciary duty claim").

The appellees' no-evidence summary judgment motion challenged the elements of a common-law negligence claim, namely, the existence of a duty, breach of that duty, and damages proximately caused by the breach. *See W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). In contrast, TUCA provides that "[if] a declarant or any other person subject to this chapter violates this chapter, the declaration, or the bylaws, any person or class of persons adversely affected by the violation has a claim for appropriate relief." Tex. Prop. Code § 82.161(a). A "declarant" is "a person, or group of persons acting in concert, who: (A) as part of a common promotional plan, offers to dispose of the person's interest in a unit not previously disposed of; or (B) reserves or succeeds to any special declarant right." *Id.* § 82.003(10). Additionally, each officer or member of the board of a condominium association "is liable as a fiduciary of the unit owners for the officer's or member's acts or omissions" and may be liable to a unit owner for money damages for an act or omission occurring in the person's capacity as an

officer or director in certain enumerated circumstances. *See id.* § 82.103(a), (f). The prevailing party in an action to enforcement the declaration, bylaws, or rules is entitled to reasonable attorney's fees and costs of litigation from the nonprevailing party. *Id.* at § 82.161(b).

Yeske's TUCA claims implicate statutory obligations that differ from the duties imposed under the common law. *See Plano Parkway*, 246 S.W.3d at 195–96. However, with the exception of Yeske's claim that the Association never legally existed, nothing in the appellees' summary judgment motion addresses Yeske's allegations that the appellees violated various provisions of the Act. *See Engel*, 350 S.W.3d at 610; *see also Smith v. Heard*, 980 S.W.2d 693, 697–98 (Tex. App.—San Antonio 1998, pet. denied) (holding that summary judgment on attorney malpractice claims did not encompass Texas Debt Collection Practices Act claim in amended petition).

Further, to the extent that the appellees argue, as they did in their reply brief in the trial court, that Yeske's statutory claims fail—including Yeske's fiduciary duty claim under section 82.103—a summary judgment movant may not use its reply to amend its motion or to raise new and independent summary judgment grounds. *Engel*, 350 S.W.3d at 609. In this circumstance, we conclude that the appellees' summary judgment motion was not broad enough to encompass Yeske's TUCA claims other than those related to Yeske's claim that the Association never existed. We therefore sustain Yeske's fifth issue in part, and reverse and remand the case for further proceedings consistent with this opinion.

## V. Severance of the Association's Claims against Yeske

In his seventh issue, Yeske contends that the trial court erred in severing the Association's claims against him when they were inextricably interwoven with his claims against the Association. The Association responds that severance was

proper because all of Yeske's claims had been disposed by summary judgment and the only claims remaining were those of the Association.

A trial court has broad discretion in the matter of severance and consolidation of causes, and the trial court's decision to grant a severance will not be reversed unless it has abused its discretion. *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990). The controlling reasons for allowing a severance are avoiding prejudice, doing justice, and increasing convenience. *Id.* A claim is properly severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues. *In re State*, 355 S.W.3d 611, 614 (Tex. 2011). If any one of these three criteria are not met, then the trial court has abused its discretion and reversal is warranted. *Owens v. Owens*, 228 S.W.3d 721, 726 (Tex. App.—Houston [14th Dist.] 2006, pet. dism'd).

According to Yeske, the Association's claims against him involve the exact same facts and issues presented by his claims, the claims are mirror opposites that are inextricably interwoven, and no judicial economy is preserved by severing the Association's claims against him. Although we have concluded that Yeske failed to raise a genuine issue of material fact on his claim that the Association was not properly incorporated and therefore never legally existed, we agree that Yeske's statutory claims under the Texas Uniform Condominium Act are so interwoven with the Association's claims against Yeske for unpaid condominium dues and fees that they involve the same facts and issues and should be tried together. *See Owens*, 228 S.W.3d at 727 (holding trial court's severance did not avoid prejudice or further convenience but instead separated interwoven claims sharing facts and

issues that should be tried together). We sustain Yeske's seventh issue and hold that the trial court abused its discretion by severing the Association's claims. We therefore reverse the trial court's April 17, 2015 severance order and remand for further proceedings.

## VI. Attorney's Fees

In his sixth issue, Yeske argues that the trial court erred in granting the appellees attorney's fees and expenses on summary judgment. Within this issue, Yeske raises several sub-issues: (1) the appellees are not entitled to fees for defending themselves; (2) David Kassab is not entitled to hybrid representation and recovery of his own fees and must segregate them; and (3) the award of attorney's fees payable in 30 days is an improper sanction.

The trial court's judgment reflects that the appellees were awarded attorney's fees based on the Declaratory Judgments Act. In any declaratory judgment proceeding, the court "may award costs and reasonable and necessary attorneys' fees as are equitable and just." Tex. Civ. Prac. & Rem. Code § 37.009. The Declaratory Judgments Act "entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). Under the Declaratory Judgments Act, a party defending a suit brought may be awarded its reasonable and necessary attorney's fees. *Bradt v. State Bar of Tex.*, 905 S.W.2d 756, 760 (Tex. App.—Houston [14th Dist.] 1995, no pet.).

As discussed above, the trial court did not err in granting summary judgment on Yeske's request for declaratory judgment that the Association never legally existed and therefore collected monies from unit owners without legal authority.

As we have also explained, however, Yeske's third amended petition included claims that the appellees violated various provisions of TUCA, which were not addressed in the appellees' summary judgment motion. Because we reverse and remand the case for further proceedings, we also reverse the award of attorney's fees for reconsideration on remand. *See* Tex. Civ. Prac. & Rem. Code § 37.009.

## CONCLUSION

The trial court properly granted summary judgment on Yeske's request for declaratory judgment and claims for negligence, gross negligence, defamation, misappropriation of funds, wrongful foreclosure, other wrongdoing, assault and battery, and intentional infliction of emotional distress. However, the trial court erred in granting summary judgment on Yeske's claims based on violations of the Texas Uniform Condominium Act (other than Yeske's claim that the Association was never legally incorporated and collected monies from unit owners without legal authority) and in awarding attorney's fees and expenses to the appellees. The trial court also erred in granting Kassab's Rule 91a motion to dismiss and the Association's motion to sever. We therefore reverse the trial court's order granting Kassab's Rule 91a motion to dismiss, affirm in part and reverse in part the trial court's summary judgment, reverse the trial court's order granting the Association's motion to sever, and remand the case for further proceedings consistent with this opinion.


/s/    Ken Wise
Justice


Panel consists of Justices Jamison, McCally, and Wise.