**Opinion issued July 25, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-23-00128-CV**

————————————

**LAUREL WENDT, Appellant**

**V.**

**EVALYN WENDT MOORE, AMILEE WENDT, AND JACKIE WENDT MARTIN, Appellees**

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-36772**

---

### MEMORANDUM OPINION

This case involves a dispute among four sisters over management of a family partnership and ownership of land used for farming. Appellant Laurel Wendt sued her sisters—appellees Evalyn Wendt Moore, Amilee Wendt, and Jackie Wendt

Martin—for breach of fiduciary duty, fraud, embezzlement/theft, and breach of contract.[1] Evalyn, Amilee, and Jackie moved for summary judgment, arguing that Laurel's claims were barred by res judicata because they were, or could have been, litigated in a prior suit between the parties in Fort Bend County that is on appeal to the Fourteenth Court of Appeals. Shortly before the summary judgment hearing, Laurel amended her petition to raise new factual allegations and claims. The trial court granted summary judgment and dismissed Laurel's claims with prejudice.

On appeal, Laurel contends that (1) the trial court's judgment, which was based on res judicata, improperly failed to reflect that it was "subservient to any final decision" made by the Fourteenth Court of Appeals in its review of the Fort Bend County judgment; (2) the trial court erred by granting summary judgment and dismissing Laurel's claims because her amended petition raised factual allegations and claims that were not addressed by the summary judgment motion; and (3) the trial court erroneously failed to recognize that Laurel's breach of contract claim could not have been litigated in the Fort Bend County suit because that claim was not ripe until after the Fort Bend County court rendered its judgment against Laurel.

We affirm in part and reverse and remand in part.

---

[1] Because some of the parties share a common last name, this opinion refers to the parties by their first names.

**Background**

*A.      The Wendt Farming Operations*

Evalyn, Amilee, Jackie, and Laurel are the only children of Jack and Billie Wendt. In 1974, Jack and Billie began conveying real property located in Fort Bend County to the sisters. Ultimately, Jack and Billie conveyed 15 tracts totaling approximately 2,900 acres of land to the sisters. The deeds conveying the properties contained two clauses that later became the subject of a dispute between the sisters: (1) a "majority rule" clause, in which each sister agreed to join in future conveyances of the property provided that the owners of a majority of all undivided interests in the property agreed; and (2) a "right of first refusal" clause that governed procedures to follow if any sister desired to sell any portion of her interest in the property.

In 1977, the sisters created a partnership called E.A.J.L. Wendt Farms ("the Partnership") to manage farming operations on the property. The sisters did not themselves engage in farming activities on each tract that had been conveyed to them by their parents. For example, Frank and Nancy Stasney, who are not parties to this appeal, leased a portion of the land from the Partnership and used the land to engage in rice farming. Other individuals leased portions of the land for the purpose of raising cattle. The Partnership also owned a water distribution system, which was located throughout the property and supplied water for sale to "end users."

3

### B. *The Fort Bend County Lawsuit*

The Partnership operated for decades without any major issues. Then, in 2018, Evalyn, Amilee, and Jackie informed Laurel that they wanted to sell the property. Stasney expressed interest in purchasing Tract 15 of the property, and he made an offer to the sisters. Laurel and her sisters disagreed over the interpretation of the majority rule clause and the right of first refusal clause contained in the deeds from their parents.

The sisters were unable to resolve their disagreements, and Evalyn, Amilee, and Jackie filed suit against Laurel in the 268th District Court of Fort Bend County ("the Fort Bend County suit"). They sought declarations concerning ownership of the property and the sisters' obligations and remedies under the majority rule clause and the right of first refusal clause. They also asserted a claim for breach of contract or anticipatory breach of contract based on Laurel's alleged rejection of the majority rule and right of first refusal clauses.

Laurel filed a counter-petition against her sisters and sought to wind up the Partnership. She also alleged that she had properly exercised her right of first refusal concerning the potential sale of Tract 15. Laurel sought numerous declarations, including a declaration that she had complied with the right of first refusal clause.

The sisters agreed to attend mediation in May 2021. At the close of mediation, the sisters signed a "Rule 11 and Mediation Settlement Agreement" ("the MSA" or

"the Agreement") concerning most of the dispute. The parties agreed that the majority rule and right of first refusal clauses are "valid and enforceable." The MSA specified that it did not settle the portion of the lawsuit relating to Tract 15, which Stasney had offered to purchase. The parties agreed to partition the remaining tracts between Laurel and her sisters.

The MSA also contained provisions relating to appraisals of the tracts. The Partnership agreed to "use its reasonable efforts to operate the Water Distribution System and sell water to end users," and the parties agreed to an equal allocation of income, expenses, profits, and losses from operation of this system.

Laurel agreed to dismiss her cause of action to dissolve the Partnership and her counterclaim against her sisters, "provided that neither Plaintiffs nor Defendant [Laurel] have released any future claim for an accounting for past business operations of [the Partnership]." Evalyn, Amilee, and Jackie agreed to "dismiss their cause of action against [Laurel] except for any claims concerning Tract 15." The MSA contained release language providing that except for issues relating to Tract 15, future claims "for an accounting for past business operations pertaining to [the Partnership]," and the parties' cattle operations, the sisters "will sign a mutual general release." The MSA stated that the sisters intended to "resolve all claims and causes of actions that currently exist relating to this dispute."

Additional disputes arose after the sisters signed the MSA. In July 2021, Laurel filed a separate suit against her sisters seeking declaratory and injunctive relief primarily relating to ownership and partitioning of a cattle herd devised to the sisters by their mother. Factual allegations in this suit included an allegation that Laurel's sisters agreed to pay their attorney with Partnership funds "over the objection of Laurel Wendt." Laurel sought multiple declarations, including a declaration that "[t]he legal services of [Laurel's sisters' attorney] cannot be charged to [the Partnership] just because three of the four sisters voted to employ him to perform legal services which directly affected a partition of their personal property owned independent of said partnership."[2] Laurel also requested that the trial court enjoin her sisters from using Partnership funds to pay their attorney. The Fort Bend County court consolidated this lawsuit with the pending Fort Bend County suit.

Evalyn, Amilee, and Jackie amended their petition in October 2021 to add additional claims. They requested that the Fort Bend County court order Laurel not

---

[2]  Laurel twice amended her petition to request related declarations. In October 2021, Laurel sought a declaration that the Partnership "has no legal right to pay the cost of the legal service incurred by Amilee Wendt, Evalyn Wendt Moore, and Jackie Wendt Martin in the Hay Meadow (tract 15) litigation as an expense of" the Partnership." She also sought a declaration that the Partnership "is not entitled to deduct from its revenue as personal services the legal fee and cost expenses of any partition litigation of real property not owned by" the Partnership. In December 2021, she requested a declaration that her sisters "could not lawfully require [the Partnership] to pay professional services and real property partition litigation costs as such costs would be applicable to real property not owned by said partnership as tax deductible business expenses of" the Partnership. Laurel later nonsuited these requests for declaratory relief.

to interfere with the closing of a contract with Stasney to purchase Tract 15 and find that Laurel's attempt to exercise her right of first refusal with respect to this tract was ineffective. They also asserted a cause of action for enforcement of the MSA, alleging that Laurel had not complied with provisions relating to obtaining appraisals of the property.

Trial began in the Fort Bend County suit in January 2022 and lasted seventeen days during January, February, and March 2022. During trial, Laurel moved to dismiss her sisters' claims for attorney's fees and abate the proceeding, arguing that her sisters' counsel "unexpectedly and without notice . . . commenced providing trial testimony to be award[ed] damages for attorney's fees on settled claims." Laurel contended that the MSA, which had been approved by the trial court, required her to dismiss her claims against her sisters and the Partnership and required her sisters to dismiss all claims against her except for claims involving Tract 15. She argued that this requirement "includes specifically by reference the then pending claims for attorney's fees that might be due to either Defendant or Plaintiffs on all matters then plead[ed] in the above styled cause excluding 'except for any claims concerning Tract 15.'" Laurel further argued that the MSA resolved all partition issues, and her

sisters therefore sought declaratory relief solely to obtain attorney's fees, which was not permissible.[3]

Following trial, the Fort Bend County court signed a final judgment on March 25, 2022. Among other things, the court declared that Laurel's failure to join in the conveyance of Tract 15 to Stasney breached the majority rule and right of first refusal clauses, and the court ordered Laurel to convey her interest in this tract to Stasney. The court divided the remaining 14 tracts "in accordance with the Parties' agreement" in the MSA. The court also ordered that Evalyn, Amilee, and Jackie recover $251,810.36 in reasonable and necessary attorney's fees and that, upon collection of this amount from Laurel, the sisters reimburse the Partnership "in the amount of $120,577.50."

Laurel moved for a new trial in April 2022. She raised several arguments with respect to the trial court's award of attorney's fees. Specifically, she argued:

> 6. The Trial Court [erred] in finding attorney's fees based upon Declaratory [Judgment] Relief which was asserted by Plaintiffs as a subterfuge to obtain attorney's fees from Defendant when attorney's fees are not authorized to be owed Defendants in the partition suit litigation which is the entire "heart" of this court's [judgment].
>
> . . . .

---

[3] Laurel also submitted a trial brief on various issues relating to attorney's fees, and she filed a petition for writ of mandamus on, among other issues, whether the Fort Bend County court abused its discretion in allowing her sisters' attorney to "present evidence regarding the reasonable and necessary attorney's fees applicable to settled and released claims as approved by the [Fort Bend County court] when it approved the [MSA]."

19. The Trial Court [erred] when it Ordered Plaintiffs to pay attorneys' fees to E.A.J.L. Wendt Farms . . . in order to attempt to "cover up" the breach of fiduciary duty of the Plaintiffs, when they used the funds of the general partnership they managed to pay their individually owed attorney's fees, when there were no pleading[s] on file asserting such a claim and Defendant had a clear right to assert such a claim in the future at a time of her choosing.

Laurel appealed the Fort Bend County court's judgment, and the case was assigned to the Fourteenth Court of Appeals. The Fourteenth Court has not issued an opinion in that appeal.

## C.     The Underlying Proceeding

While Laurel's appeal of the Fort Bend County judgment was pending, Laurel filed the underlying suit against her sisters in June 2022, and the case was assigned to the 11th District Court of Harris County. Laurel amended her petition two months later. She alleged that although the MSA required the sisters to dismiss their pending claims against each other, her sisters "proceeded to prosecute claims for attorney's fees sought in their Declaratory Judgment claims and Anticipatory Breach of Contract claims with successful results." The trial court awarded over $250,000 in attorney's fees to Evalyn, Amilee, and Jackie, and then ordered them to pay approximately $120,000 to the Partnership as reimbursement. Laurel alleged that her sisters had wrongfully used Partnership funds to pay their individual attorney's fees, which resulted in Laurel, as a one-fourth owner of the Partnership, effectively being

9

required to pay the legal fees of the attorney who sued her in the Fort Bend County suit.

Laurel asserted a claim for breach of fiduciary duty, alleging that as general partners of the Partnership, Evalyn, Amilee, and Jackie owed her duties not to self-deal and to exercise their powers "with loyalty, care, good faith and judgment." Laurel alleged that her sisters breached their fiduciary duties to her by failing to (1) exercise a high degree of care to preserve Laurel's money "and to pay it to only those entitled to receive it"; (2) keep Laurel's funds "as a separate and identifiable account"; and (3) make an accurate accounting. Laurel also asserted a cause of action for common law and statutory fraud, alleging that her sisters' "acts and/or omissions previously described above, in whole or in part, amount to a fraud" upon her.

Laurel also asserted a claim against her sisters for embezzlement/theft, based on her sisters' use of Partnership funds to pay their attorney in the Fort Bend County suit. Laurel alleged that her sisters "failed to properly account for funds they held in a fiduciary capacity and misapplied fiduciary property contrary to the parties' agreement." She asserted that these actions constituted self-dealing and civil theft.

Finally, Laurel asserted a cause of action for breach of contract. She alleged:

> As a result of Defendants' breach of contract, Plaintiff has suffered actual damages in the amount of $251,810.36 and additional amounts to be identified as damages in an amount "not less than $100,000.00." The damages are for repayment of attorney's fees that were not owed to the Defendants by Plaintiff and resulted from the Defendants

proceeding on claims previously asserted in a settled and contractually released cause of action.

The amount that Laurel identified as actual damages—$251,810.36—corresponded to the amount the Fort Bend County court had ordered her to pay as attorney's fees.

Evalyn, Amilee, and Jackie moved for traditional summary judgment on Laurel's claims. As the sole basis for summary judgment, the sisters argued that Laurel's claims were all barred by res judicata because they were, or could have been, litigated in the Fort Bend County suit, which had been tried to a final judgment on the merits. They argued that Laurel's breach of contract claim involved the MSA, but both Laurel and her sisters had alleged and actively litigated violations of the MSA in the Fort Bend County suit. They further argued that Laurel's other claims were premised on allegations that the sisters had used Partnership funds to pay legal expenses, an issue that Laurel had raised in the Fort Bend County suit. They argued that the underlying proceeding was an impermissible collateral attack on the judgment in the Fort Bend County suit, which Laurel had appealed to the Fourteenth Court of Appeals. As summary judgment evidence, the sisters attached numerous documents from the Fort Bend County suit, including various pleadings filed by all parties, the MSA, orders by the Fort Bend County court, Laurel's motion to abate, her trial brief on attorney's fees, the final judgment, Laurel's motion for new trial, and an excerpt from the reporter's record. A hearing was scheduled on this motion for January 9, 2023.

On January 2, 2023, seven days before the summary judgment hearing, Laurel filed a second amended petition. This amended petition included new factual allegations, including allegations relating to the award of attorney's fees in the Fort Bend County suit, leases between the Partnership and third parties that had been used to supply water for rice farming operations, Stasney's role in acting as the "water master" for setting prices for water sales, and a potential joint venture between Stasney and Laurel's sisters.

Laurel asserted six causes of action in her second amended petition. In addition to the claims raised in her first amended petition, Laurel asserted two new claims for breach of fiduciary duty and embezzlement/theft. These claims involved allegations relating to her sisters' failure to renew two Partnership leases with third parties, their decision to allow Stasney to use Partnership equipment and water for his rice crop, and a joint venture between Stasney and a new entity created by Laurel's sisters that engaged in rice growing operations in 2022 and 2023.

Evalyn, Amilee, and Jackie did not file an amended or supplemental motion for summary judgment in response to Laurel's second amended petition. The trial court signed an order granting the sisters' summary judgment motion. The court rendered a take-nothing judgment against Laurel and ordered that her claims were dismissed "in their entirety and with prejudice to the re-filing of same." This appeal followed.

## Appellate Jurisdiction

Laurel filed a motion to dismiss her appeal, noting that she amended her petition after her sisters moved for summary judgment, but the sisters did not amend their motion to address Laurel's new allegations. Laurel argues that the trial court's summary judgment order was not clear about whether it addressed the new claims, and therefore it is an unappealable interlocutory order.

"Appellate jurisdiction is never presumed." *Saleh v. Hollinger*, 335 S.W.3d 368, 370 (Tex. App.—Dallas 2011, pet. denied). This Court has appellate jurisdiction to review appeals from final judgments, as well as appeals from certain interlocutory orders when expressly authorized by statute. *Bonsmara Nat. Beef Co., LLC v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 390 (Tex. 2020). A judgment rendered without a conventional trial on the merits is not final unless (1) it actually disposes of every pending claim and party, or (2) it clearly and unequivocally states that it finally disposes of all claims and parties, even if it does not actually do so. *In re Guardianship of Jones*, 629 S.W.3d 921, 924 (Tex. 2021) (per curiam); *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001).

Although "[t]alismanic phrases are not required or dispositive," a statement such as "'This judgment finally disposes of all parties and all claims and is appealable,' would leave no doubt about the court's intention." *In re Guardianship of Jones*, 629 S.W.3d at 924 (quoting *Lehmann*, 39 S.W.3d at 206). "If the order

contains a 'clear and unequivocal' finality phrase disposing of the entire case, the order is final, and the failure to actually dispose of all claims and parties renders the order erroneous but not interlocutory." *Id.*; *In re Elizondo*, 544 S.W.3d 824, 828 (Tex. 2018) (per curiam) ("[S]ince the original order included a finality phrase, it was clear and unequivocal.").

In *Lehmann*, the Texas Supreme Court addressed the situation potentially present in this case. The court stated:

> [A]n order can be final and appealable when it should not be. For example, an order granting a motion for summary judgment that addressed all of the plaintiff's claims when it was filed but did not address claims timely added by amendment after the motion was filed may state unequivocally that final judgment is rendered that the plaintiff take nothing by his suit. Granting more relief than the movant is entitled to makes the order reversible, but not interlocutory.

*Lehmann*, 39 S.W.3d at 204; *Mensa-Wilmot v. Smith Int'l, Inc.*, 312 S.W.3d 771, 777 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("Although the amended petition added claims not addressed by [the defendant's] motion for summary judgment, that fact does not make the trial court's judgment interlocutory because the final judgment plainly resolved the entire case.").

Here, Laurel filed her first amended petition in August 2022 and asserted claims for (1) breach of fiduciary duty; (2) fraud; (3) embezzlement/theft; and (4) breach of contract. In November 2022, Evalyn, Amilee, and Jackie moved for summary judgment and argued that res judicata barred all Laurel's claims because

these claims either were litigated or could have been litigated in the Fort Bend County suit.

Days before the summary judgment hearing, on January 2, 2023, Laurel filed her second amended petition and added new factual allegations. In addition to the claims that she asserted in her first amended petition, she also asserted claims arising out of acts purportedly occurring after the Fort Bend County court signed its final judgment. For example, among other new allegations, she alleged that her sisters breached their fiduciary duties to her by using Partnership funds to engage in a "rice growing joint enterprise" with Stasney in 2022 and 2023. Evalyn, Amilee, and Jackie did not amend their motion for summary judgment.

On January 20, 2023, the trial court signed an order granting the summary judgment motion. This order stated:

> That on this the day [sic] came on to be heard Defendants, **EVALYN WENDT MOORE, AMILEE WENDT**, and **JACKIE WENDT MARTIN'S** Motion for Summary Judgment pursuant to Tex. R. Civ. P. 166a(c), and that, upon consideration of the Motion, Plaintiff's Response (if any), and the arguments of counsel (if any), the Court finds the Motion to be meritorious and **GRANTS** the requested relief. It is therefore,
>
> **ORDERED**, **ADJUDGED**, and **DECREED** that summary judgment is issued that Plaintiff, **LAUREL WENDT** shall **TAKE NOTHING** from Defendants, **EVALYN WENDT MOORE, AMILEE WENDT**, and **JACKIE WENDT MARTIN** by the claims and causes of action asserted herein, which are hereby **DISMISSED** in their entirety and with prejudice to the re-filing of same.
>
> This summary judgment fully and finally resolves all claims and causes of action asserted herein, and is **FINAL** upon entry . . . .

15

This order unequivocally states that it disposes of all claims and causes of action and that it is final. We conclude that this order contains a "'clear and unequivocal' finality phrase disposing of the entire case" and is therefore final for the purposes of appeal. *See In re Guardianship of Jones*, 629 S.W.3d at 924.

We hold that we have appellate jurisdiction over this appeal, and we therefore deny Laurel's motion to dismiss the appeal. *See id.*; *Lehmann*, 39 S.W.3d at 204. We address whether the trial court's summary judgment order erroneously granted more relief than was requested when we address Laurel's second appellate issue below.

### Res Judicata

In her first issue, Laurel argues that the trial court erred by not including language in its judgment specifying that its decision was "subservient to any final decision made by the [Fourteenth] Court of Appeals in" the appeal of the Fort Bend County suit and that "any conflict in the provisions of the two decisions would be resolved in favor of the provisions recited in" the Fourteenth Court's decision. In her third issue, she argues that the trial court erred by failing to recognize that her cause of action for breach of the MSA did not exist until after the Fort Bend County court rendered its final judgment, and therefore summary judgment on this claim based on res judicata was improper.

### A.    *Standard of Review*

We review a trial court's summary judgment ruling de novo. *Helena Chem. Co. v. Cox*, 664 S.W.3d 66, 72 (Tex. 2023). A party moving for traditional summary judgment must demonstrate that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law on the issues expressly set out in the motion, answer, or other response. *See* TEX. R. CIV. P. 166a(c); *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021). A defendant moving for summary judgment based on an affirmative defense has the burden to conclusively establish that defense. *Draughon v. Johnson*, 631 S.W.3d 81, 88 (Tex. 2021) (quoting *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 593 (Tex. 2017)). If the movant satisfies this burden, the burden shifts to the nonmovant to raise a fact issue precluding summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018).

A fact issue exists if more than a scintilla of evidence establishes the existence of the challenged element. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.* at 601 (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). The evidence is less than a scintilla if it is so weak that it does no more than create a mere surmise or suspicion of the fact's existence. *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

17

In reviewing a summary judgment ruling, we examine the evidence in the light most favorable to the non-moving party, indulging reasonable inferences and resolving doubts against the party seeking summary judgment. *Helena Chem. Co.*, 664 S.W.3d at 73; *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021).

## B.    Governing Law

Res judicata—also known as claim preclusion—bars lawsuits that arise out of the same subject matter as a prior suit when, "with the use of diligence, that subject matter could have been litigated in the prior suit." *Eagle Oil & Gas*, 619 S.W.3d at 705; *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007) ("Generally, res judicata prevents a plaintiff from abandoning claims and subsequently asserting them when the claims could have been litigated in the prior suit."). The doctrine of res judicata "seeks to bring an end to litigation, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery." *Daccach*, 217 S.W.3d at 449; *see Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 750 (Tex. 2017) ("For any rational and workable judicial system, at some point litigation must come to an end, so that parties can go on with their lives and the system can move on to other disputes.").

"[A] final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose." *Eagle Oil & Gas*, 619 S.W.3d at 705 (quoting *Barr v. Resol. Tr. Corp.*, 837 S.W.2d 627, 631 (Tex. 1992)). When deciding whether a set of facts forms a transaction, we make this determination "pragmatically," giving weight to considerations such as "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage." *Id.* (quoting *Barr*, 837 S.W.2d at 631).

The elements of res judicata are: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action. *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 225 (Tex. 2022) (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)); *Eagle Oil & Gas*, 619 S.W.3d at 705–06 (quoting *Daccach*, 217 S.W.3d at 449). The party asserting the defense of res judicata bears the burden to prove each element of the defense. *Eagle Oil & Gas*, 619 S.W.3d at 706.

A judgment is final for the purposes of res judicata "despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo." *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986) (op. on reh'g) (quotations

19

omitted); *see Engelman Irrigation Dist.*, 514 S.W.3d at 749 ("That the judgment may have been wrong or premised on a legal principle subsequently overruled does not affect application of res judicata.") (quotations omitted). However, an earlier judgment that has been reversed is not preclusive "because a reversed judgment is generally nullified, leaving it as if it had never been rendered other than as to further rights of appeal." *Foussadier v. Triple B Servs., LLP*, No. 01-21-00024-CV, 2022 WL 3589497, at *3 (Tex. App.—Houston [1st Dist.] Aug. 23, 2022, pet. denied) (mem. op.) (quotations omitted).

Res judicata cannot bar a claim that was not ripe at the time the first lawsuit was filed. *Eagle Oil & Gas*, 619 S.W.3d at 706. The ripeness doctrine requires a plaintiff to have a concrete injury before bringing a claim, and it is a "threshold issue that implicates subject matter jurisdiction." *Id.* (quoting *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998)). The court must consider whether, at the time the suit is filed, "the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Id.* (quoting *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851–52 (Tex. 2000)). Additionally, a judgment in one suit will not bar "a subsequent suit on the same question between the same parties where, in the interval, the facts have changed, or new facts have occurred which may alter the legal rights or relations of the parties." *Hernandez v. Del Ray Chem. Int'l, Inc.*, 56 S.W.3d 112,

20

116 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (citing *Marino v. State Farm Fire & Cas. Ins. Co.*, 787 S.W.2d 948, 949–50 (Tex. 1990)).

## C.  *Analysis*

### 1.  **Effect of Appeal Pending Before Fourteenth Court of Appeals**

In her first issue, Laurel argues that because the judgment in the Fort Bend County suit was on appeal to the Fourteenth Court of Appeals, the Fourteenth Court had dominant jurisdiction over the case. Rather than dismissing Laurel's claims with prejudice in the summary judgment order, the trial court in the underlying case should have abated the case to allow the Fourteenth Court to exercise its dominant jurisdiction or should have qualified its dismissal of Laurel's claims to "reflect that its language was subservient to any final decision made by the [Fourteenth] Court of Appeals."

The doctrine of dominant jurisdiction applies when venue is proper in two or more Texas counties or courts. *Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 622 (Tex. 2005); *Gordon v. Jones*, 196 S.W.3d 376, 382 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Generally, the court in which suit is first filed acquires dominant jurisdiction to the exclusion of "other coordinate courts."[4] *In re J.B. Hunt*

---

[4] An exception to the general rule of dominant jurisdiction exists when the plaintiff in the first-filed suit is guilty of inequitable conduct that caused the second-filing party to delay filing of the second suit. *In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 294–95 (Tex. 2016) (orig. proceeding). In that circumstance, the inequitable conduct may estop the first-filing party from using that suit to abate a second-filed proceeding. *Id.* at 294. Laurel has not pointed to any evidence that Evalyn, Amilee,

21

*Transp., Inc.*, 492 S.W.3d 287, 294 (Tex. 2016) (orig. proceeding) (quotations omitted). Thus, when two suits are "inherently interrelated, a plea in abatement in the second action *must* be granted." *Id.* (quotations omitted). "The jurisprudential reason for the rule is that once a matter is before a court of competent jurisdiction, its action must necessarily be exclusive because it is impossible that two courts can, at the same time, possess the power to make a final determination of the same controversy between the same parties." *Perry v. Del Rio*, 66 S.W.3d 239, 252 (Tex. 2001) (quotations omitted).

We conclude that this case does not present a question of dominant jurisdiction. Evalyn, Amilee, and Jackie filed suit against Laurel in Fort Bend County in 2018. Over the next four years, the parties asserted multiple claims against each other. Laurel filed a separate suit against her sisters in July 2021, but that case was assigned to the same district court in Fort Bend County and was consolidated with her sisters' pending lawsuit. Ultimately, the trial court in the Fort Bend County suit rendered judgment on the sisters' claims in March 2022. Laurel appealed that

and Jackie engaged in any inequitable conduct that caused Laurel to delay filing suit in Harris County. Instead, Laurel's contention that her sisters improperly paid their attorney's fees using Partnership funds arose after her sisters had already filed the Fort Bend County suit and it was brought to the attention of that court during the pendency of that suit. After the Fort Bend County court rendered its judgment, Laurel filed the underlying proceeding in Harris County and asserted claims that her sisters had defrauded her, stole her funds, and breached their fiduciary duties to her.

judgment to the Fourteenth Court of Appeals. Then, while that case was on appeal, Laurel filed the underlying proceeding in Harris County in June 2022.

Thus, there was never a time in which multiple suits were pending in trial courts in multiple counties simultaneously. By the time Laurel filed the underlying suit in Harris County, the district court in the Fort Bend County suit had rendered a final judgment, and her appeal of that judgment was pending before the Fourteenth Court of Appeals. We therefore agree with Evalyn, Amilee, and Jackie that this case presents a question of res judicata, not dominant jurisdiction.

"[A] judgment is final for the purposes of issue and claim preclusion despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo." *Scurlock Oil*, 724 S.W.2d at 6 (quotations omitted). This is not a situation in which Laurel has appealed the Fort Bend County court's judgment for a trial de novo. Instead, she is seeking reversal of the Fort Bend County court's judgment by the Fourteenth Court of Appeals. The fact that Laurel has appealed the Fort Bend County court's judgment to an intermediate appellate court does not prevent that judgment from having preclusive effect. *See id.*; *Foussadier*, 2022 WL 3589497, at *4 (concluding that even though summary judgment was appealed, "it was final for the purpose of res judicata as of the date of its issuance").

We conclude that the Fort Bend County court's judgment had preclusive effect as of the date of its issuance, despite Laurel's later appeal to the Fourteenth

23

Court of Appeals. The trial court did not abuse its discretion by failing to abate the underlying proceeding or by failing to qualify its dismissal of Laurel's claims.

We overrule Laurel's first issue.

## 2. Whether Res Judicata Bars Laurel's Breach of Contract Claim

In her third issue, Laurel argues that the trial court erred in dismissing her breach of contract claim on res judicata grounds because her cause of action did not exist until the Fort Bend County court rendered judgment requiring Laurel to pay attorney's fees to her sisters, and therefore this claim could not have been brought in the Fort Bend County suit. Evalyn, Amilee, and Jackie argue that summary judgment based on res judicata grounds was proper because Laurel's breach of contract claim became ripe during the pendency of the Fort Bend County suit, and the parties raised and litigated issues relating to this claim during that suit.

A claim for breach of a settlement agreement is a "separate breach-of-contract claim, which is subject to the normal rules of pleading and proof." *Mantas v. Fifth Ct. of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996) (orig. proceeding) (per curiam); *Batjet, Inc. v. Jackson*, 161 S.W.3d 242, 245 (Tex. App.—Texarkana 2005, no pet.) ("The settlement agreement alone is insufficient to provide a basis for judgment because it would deprive a party of the right to be confronted by appropriate pleadings, assert defenses, conduct discovery, and submit contested fact issues to a judge or jury."). When a dispute over a settlement agreement arises while the trial

24

court still has jurisdiction over the underlying action, "a claim to enforce the settlement agreement should, if possible, be asserted in that court under the original cause number." *Mantas*, 925 S.W.2d at 658; *Batjet*, 161 S.W.3d at 245 (suggesting "an amended pleading or counterclaim" as vehicles to raise claim for enforcement of settlement agreement in original action). If breach of the settlement agreement occurs after the underlying action has concluded, then the claim could not have been raised in the prior suit, and res judicata will not bar a subsequent suit for breach of the settlement agreement. *Compania Financiara Libano, S.A. v. Simmons*, 53 S.W.3d 365, 367 (Tex. 2001) (per curiam); *Mantas*, 925 S.W.2d at 658–59 (stating that if dispute over settlement agreement "arises while the underlying action is on appeal," party seeking enforcement "must file a separate breach of contract action").

It is undisputed that the parties attended mediation and signed the MSA while the Fort Bend County suit was pending. Among other things, the MSA divided the tracts of property between the sisters and set out an appraisal process for each tract. The MSA also contained the following provisions:

> 13.    Defendant [Laurel] will dismiss her cause of action to dissolve EAJL Wendt Farms and Counterclaim against Plaintiffs [Evalyn, Amilee, and Jackie]; provided that neither Plaintiffs nor Defendant have released any future claim for an accounting for past business operations of EAJL. Plaintiffs shall dismiss their cause of action against Defendant except for any claims concerning Tract 15. The parties hereby stipulate that the terms of the Gift Deeds (right of first refusal and majority rule clauses as described in the Lawsuit) are valid and enforceable. The parties have, and will continue to have, access to the

books and records of EAJL. No party will interfere with any other parties['] right to view bank statements and online activities.

. . . .

16.    Save and except for the Tract 15 exception, any future claim for an accounting for past business operations pertaining to EAJL, or the cattle operation of the parties, the parties will sign a mutual general release. It is the intention of the parties to resolve all claims and causes of actions that currently exist relating to this dispute. This settlement agreement specifically excludes matters, including cattle operations, if any, arising from or related to the probate of the Billie Wendt Estate.

Evalyn, Amilee, and Jackie presented summary judgment evidence that disputes arose among the sisters concerning the MSA during the pendency of the Fort Bend County suit. For example, in October 2021, they amended their petition to assert a claim against Laurel for enforcement of the MSA, alleging that Laurel had not complied with the MSA's appraisal provisions.

Laurel also filed amended counterpetitions in October and December 2021. Although she did not assert a cause of action for breach of the MSA, she acknowledged that a dispute had arisen about the appraisal provision, and she sought declaratory relief interpreting this provision. She also sought declarations that the Partnership had no legal right to pay the costs of legal services incurred by her sisters and that her sisters could not require the Partnership to pay their legal expenses.[5] Additionally, in both her second and third amended counterpetitions, she expressly

---

[5]    Laurel later filed a notice of nonsuit with respect to her request for these declarations.

26

referenced the release provisions of the MSA and "hereby expressly asserted [the MSA] as a bar and release for any claims asserted by the three sisters that breache[d] the specific terms" of that agreement.

In January 2022, while trial proceedings were ongoing in the Fort Bend County suit, Laurel moved to dismiss or abate "all attorney's fees claims settled and included in the scope of" the MSA. Laurel argued:

> During the trial of this case, Plaintiffs' counsel unexpectedly and without notice to Defendant, Laurel Wendt, commenced providing trial testimony to be award[ed] damages for attorney's fees on settled claims. The testimony expressly violated the clear terms of the [MSA]. This breach of the specific terms of the settlement contract and the anticipated terms yet to be signed and recited as the court's Partial Judgment in this cause prohibits Defendant, Laurel Wendt, to be able to timely assert her claim for damages of this breach of the settlement contract or Partial Judgment. Further, she was not given notice that these settled issues would be litigated.

She further argued that the MSA settled the parties' dispute with respect to the validity and enforcement of the right of first refusal and majority rule clauses, and thus her sisters' declaratory judgment claims "that had been '[s]puriously' alleged against [Laurel] in order to solely pave the way to an award of attorney's fees claims were concluded." She argued that the court should resolve the meaning of the MSA's requirement that the parties "will sign a mutual general release." Laurel also submitted a trial brief concerning various attorney's fees issues to the Fort Bend County court. She also sought mandamus relief from this Court, arguing that the Fort Bend County court abused its discretion by allowing her sisters' counsel to "present

27

evidence regarding the reasonable and necessary attorney's fees applicable to settled and released claims."[6]

In its final judgment, the Fort Bend County court ordered that Evalyn, Amilee, and Jackie recover from Laurel "reasonable and necessary attorney fees in the amount of $251,810.36." The court further ordered that, upon collecting this amount, Evalyn, Amilee, and Jackie were required to reimburse the Partnership in the amount of $120,577.50.

Laurel moved for a new trial and raised numerous challenges to the final judgment. Among other contentions, Laurel argued that the trial court erred "when it did not render judgment when it approved the [MSA]"; when it did not order that all the parties' claims—except for claims relating to Tract 15 and Partnership expenditures—"be dismissed and therefore no affirmative relief for either party for attorney's fees could be found owed by Defendant to Plaintiffs on the Dismissed claims"; and when it "failed to enforce dismissal of all claims between the parties covered by the general mutual release of all claims." Laurel also argued that the trial court erred by awarding attorney's fees based on the claims for declaratory relief, claims that her sisters had asserted as "a subterfuge to obtain attorney's fees," which

---

[6] Following entry of the Fort Bend County court's final judgment, a panel of this Court dismissed Laurel's mandamus petition as moot. *See In re Wendt*, No. 01-22-00186-CV, 2022 WL 1787428, at *1 (Tex. App.—Houston [1st Dist.] June 2, 2022, orig. proceeding) (per curiam) (mem. op.).

are not allowed in partition suits. She further argued that the trial court erred by ordering her sisters to pay attorney's fees to the Partnership "in order to attempt to 'cover up' the breach of fiduciary duty of the Plaintiffs, when they used the funds of the general partnership they managed to pay their individually owed attorney's fees."

In the underlying proceeding, Laurel asserted a claim for breach of contract. In her first amended petition, she alleged as follows:

> As a result of Defendants' breach of contract, Plaintiff has suffered actual damages in the amount of $251,810.36 and additional amounts to be identified as damages in an amount "not less than $100,000.00." The damages are for repayment of attorney's fees that were not owed to the Defendants by Plaintiff and resulted from the Defendants proceeding on claims previously asserted in a settled and contractually released cause of action.

In her second amended petition, Laurel added allegations that she fully or substantially performed her contractual obligations under the MSA "to terminate litigation claims," but her sisters "breached their obligation to terminate litigation claims" as required by MSA section 13. She further alleged that evidence might establish that some portion of the amount that she was ordered to pay her sisters in attorney's fees "was ordered paid as a result of attorneys' fees claims asserted in violation of said Section 13 of the recited agreement."

We agree with Evalyn, Amilee, and Jackie that Laurel's claim for breach of the MSA arose during the pendency of the Fort Bend County suit and could have been—and was—raised during that proceeding. Laurel's claim is predicated on her

29

sisters' alleged failure to comply with sections 13 and 16 of the MSA, which required the parties to dismiss most of the pending claims among them and sign a mutual general release. Her sisters did not dismiss their claims. Ultimately, the Fort Bend County court ordered Laurel to pay $251,810.36 in attorney's fees to her sisters, attorney's fees to which, Laurel argues, her sisters would not have been entitled had they dismissed their claims as promised in the MSA.

The precise amount of Laurel's alleged damages—the fee award rendered against her—was not known until the Fort Bend County court signed its final judgment in March 2022. However, Laurel knew by the early days of trial in January 2022—at the latest—that her sisters intended to seek attorney's fees for "settled" declaratory judgment claims. Although the summary judgment record does not include any evidence that Laurel sought a trial amendment to add a claim for breach of the MSA, the record does contain evidence that Laurel brought her sisters' alleged breach to the attention of the Fort Bend County court via her request that the court dismiss the claims for attorney's fees or abate those claims. Laurel also challenged the Fort Bend County court's allowance of testimony on this matter in a mandamus petition, and she challenged the fee award in her motion for new trial following entry of the Fort Bend County court's final judgment.

The Texas Supreme Court has held that res judicata cannot bar a claim that was not ripe at the time the first lawsuit was filed. *Eagle Oil & Gas*, 619 S.W.3d at

706. At the time Evalyn, Amilee, and Jackie filed the first lawsuit in Fort Bend County, Laurel's breach of contract claim was not ripe because the contract upon which that claim is based—the MSA—had not yet been created and signed, let alone allegedly breached.

However, the Texas Supreme Court has also held that when a dispute over a settlement agreement arises while the trial court still has jurisdiction over the underlying action, "a claim to enforce the settlement agreement should, if possible, be asserted in that court under the original cause number." *Mantas*, 925 S.W.2d at 658. If breach of the settlement agreement occurs after the underlying action concludes, res judicata will not bar a later suit for breach of that agreement. *Compania Financiara Libano*, 53 S.W.3d at 367. Here, Laurel's claim for breach of the MSA arose during the pendency of the Fort Bend County suit, and she raised her sisters' alleged breach of the MSA as an argument against an award of attorney's fees in her sisters' favor.

Because Laurel could have raised her claim that her sisters breached the MSA by not releasing settled causes of action in an attempt to recover attorney's fees in the prior Fort Bend County suit, we conclude that res judicata bars assertion of this claim in the underlying Harris County suit. *See Eagle Oil & Gas*, 619 S.W.3d at 705 (stating that res judicata bars lawsuits that arise out of same subject matter as prior suit when, "with the use of diligence, that subject matter could have been litigated

in the prior suit"). We hold that the trial court did not err by granting summary judgment in favor of Evalyn, Amilee, and Jackie on Laurel's claim for breach of contract.

We overrule Laurel's third issue.

### Summary Judgment on Claims Not Challenged in Motion

In her second issue, Laurel argues that the trial court erred by dismissing her claims of embezzlement/theft and breach of fiduciary duty because these claims were not challenged in her sisters' summary judgment motion.

### A.    Governing Law

A trial court may only grant summary judgment upon grounds expressly asserted in the summary judgment motion. *G&H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam); TEX. R. CIV. P. 166a(c); *see Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013) (per curiam) ("A trial court cannot grant summary judgment on grounds that were not presented."). Generally, it is reversible error for a trial court to grant summary judgment on a claim not addressed in the motion. *G&H Towing*, 347 S.W.3d at 297; *Cooper v. Litton Loan Servicing, LP*, 325 S.W.3d 766, 769 (Tex. App.—Dallas 2010, pet. denied) ("It is well-settled that a summary judgment disposing of claims not addressed in the motion for summary judgment is improper."); *see also Lehmann*, 39 S.W.3d at 200 ("[F]or example, if a defendant moves for summary judgment on only one of four claims asserted by the plaintiff,

32

but the trial court renders judgment that the plaintiff take nothing on all claims asserted, the judgment is final—erroneous, but final.").

Courts have recognized a limited exception to this rule and affirmed summary judgments, even when the underlying motion omitted one of multiple causes of action, "when the omitted ground was intertwined with, and precluded by, a ground addressed in the motion." *G&H Towing*, 347 S.W.3d at 297. With respect to this exception, this Court has stated:

> Although the exception's application has been expressed in various ways, it can be reduced to two: (1) when the movant has conclusively proved or disproved a matter (usually corresponding to a claim's element or to an affirmative defense) that would also preclude the unaddressed claim as a matter of law or (2) when the unaddressed claim is derivative of the addressed claim, and the movant proved its entitlement to summary judgment on that addressed claim. For the exception to apply, this Court has always required a very tight fit between what was proved or disproved in the motion and what elements the unaddressed claim, as it was alleged, required: otherwise, the exception could swallow the rule.

*Wilson v. Davis*, 305 S.W.3d 57, 73 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (internal citation omitted); *see G&H Towing*, 347 S.W.3d at 297–98 (quoting *Wilson* and stating that while trial court errs in granting summary judgment on cause of action not expressly presented by written motion, that error "is harmless when the omitted cause of action is precluded as a matter of law by other grounds raised in the case").

33

A party may amend her pleadings, including after a motion for summary judgment is filed, until seven days before trial. *Yeske v. Piazza Del Arte, Inc.*, 513 S.W.3d 652, 671 (Tex. App.—Houston [14th Dist.] 2016, no pet.); TEX. R. CIV. P. 63. A summary judgment proceeding is a trial within the meaning of Rule 63. *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988); *Yeske*, 513 S.W.3d at 671. This Court has held that when a plaintiff amends its petition to add claims against a summary judgment movant, "the movant may not address the new claims by reply but must instead file an amended or supplemental motion." *Vertex Servs., LLC v. Oceanwide Houston, Inc.*, 583 S.W.3d 841, 852 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *Blancett v. Lagniappe Ventures, Inc.*, 177 S.W.3d 584, 592 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("[C]laims pleaded after a summary judgment is filed must be addressed by an amended or supplemental motion, not by reply brief.").

When an amended petition raises new theories of liability, "summary judgment may not be granted as to those theories without a supplemental, amended, or new motion expressly addressing them." *Silver Gryphon, LLC v. Bank of N.Y. Mellon*, 529 S.W.3d 595, 598 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Generally, if a party does not address claims asserted in an amended petition, that party is not entitled to summary judgment "on the entire case because such judgment would grant more relief than requested." *Id.* However, like the situation in which a

34

summary judgment motion addresses some but not all pleaded claims, an amended, supplemental, or new summary judgment motion is not always necessary in response to an amended petition when (1) the amended petition essentially reiterates previously pleaded theories of liability; (2) a ground asserted in a motion for summary judgment conclusively negates a common element of the newly and previously pleaded claims; or (3) the original motion is broad enough to encompass the newly asserted claims. *Id.* (citations and quotations omitted); *Rotating Servs. Indus., Inc. v. Harris*, 245 S.W.3d 476, 487 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

## B. *Whether Laurel's Second Amended Petition Raised New Factual Allegations or Claims Not Covered by the Summary Judgment Motion*

We begin our analysis by comparing Laurel's first and second amended petitions. *See Silver Gryphon*, 529 S.W.3d at 599. We then compare the theories of liability pleaded by Laurel with the grounds asserted in the summary judgment motion. *See id.*

### 1. Laurel's First Amended Petition

In her first amended petition, Laurel alleged that she and her sisters established the Partnership in 1977, and their father managed the Partnership until his death in 2013. After that point, Laurel managed the partnership with some assistance from Evalyn. In 2017, however, Evalyn, Amilee, and Jackie removed Laurel as the manager and decided that they wanted to sell the property gifted by

35

their parents. When Laurel did not agree, the Fort Bend County suit ensued, eventually leading to the MSA and a final judgment.

During the Fort Bend County suit, Laurel allegedly learned that her sisters were using Partnership funds to pay their attorney. Laurel consulted with a tax expert, who notified the Partnership's accountant that the Partnership could not deduct the sisters' individual legal expenses as general partnership expenses. Additionally, despite the release language in the MSA, Laurel's sisters did not dismiss their claims for declaratory relief and ultimately recovered $251,810.36 in attorney's fees against Laurel, with a requirement that they reimburse the Partnership in the amount of $120,577.50.

Laurel raised four causes of action in her first amended petition: (1) breach of fiduciary duty; (2) fraud; (3) embezzlement/theft; and (4) breach of contract.[7] In her breach of fiduciary duty claim, Laurel alleged that her sisters, as partners of the Partnership, owed her fiduciary duties which they violated by failing to conserve her money "and to pay it to only those entitled to receive it"; failing to keep her funds in a separate and identifiable account; and failing to make an accurate accounting.

---

[7] In her second appellate issue, Laurel argues that the trial court erred by dismissing her claims for breach of fiduciary duty and embezzlement/theft because her sisters' summary judgment motion did not address the new allegations with respect to these claims contained in her second amended petition. She does not argue that the trial court erred by dismissing her fraud and breach of contract claims on this basis. We therefore do not address Laurel's fraud and breach of contract claims in this section.

She requested over $30,000 in actual damages and over $600,000 in exemplary damages.

In her embezzlement/theft cause of action, Laurel alleged that her sisters "failed to properly account for funds they held in a fiduciary capacity and misapplied fiduciary property contrary to the parties' agreement and for their self-dealings and civil theft." The sisters allegedly continued these actions after receiving the warning from Laurel's tax expert. Laurel again sought over $600,000 in actual and exemplary damages.

Laurel's first amended petition was her live pleading at the time her sisters moved for summary judgment in November 2022. The sole ground presented in the summary judgment motion was that all Laurel's claims should be dismissed based on res judicata.

### 2.    Laurel's second amended petition

In her second amended petition, filed seven days before the summary judgment hearing in January 2023, Laurel restated her allegations from her first amended petition, but she also included new allegations. Laurel alleged that the Partnership leased two tracts—the Unitrust Lease and the Darst Lease—to third parties for rice farming operations. The Partnership owned a water distribution system that was crucial for providing irrigation for rice farming. Stasney also

conducted rice farming operations on Partnership lands, and he eventually "became the water master operating and pricing the water sales" for Partnership property.

Laurel further alleged that her sisters began the 2022 rice growing season by using her name "as an owner of the Rice Crops filed with all applicable government agencies on land that was to be partitioned to" her sisters. Her sisters allegedly used Partnership funds and employees "to operate and fund their rice growing activities using Stasney as the farmer and selling him water without pricing the water or requiring him to pay for the water until after the crop was harvested." Laurel alleged that her sisters created a new entity and planned to start a joint venture with Stasney and other lessees to conduct rice growing operations. She alleged that her sisters had made an oral agreement with Stasney to "furnish [him] water if he would joint venture with their own farming partnership [the new entity] rather than" the Partnership, to Laurel's exclusion. Her sisters also allegedly failed to renew the Unitrust and Darst Leases, possibly as part of a scheme for that lessee to join a rice farming joint venture with the sisters' new entity.

Laurel asserted six causes of action in her second amended petition: (1) a claim for "theft/embezzlement of property and/or breach of fiduciary duty"; (2) "first cause of action for breach of fiduciary duty"; (3) "second cause of action for breach of fiduciary duty"; (4) fraud; (5) "cause of action for embezzlement/theft"; and (6) breach of contract. Her claim for "theft/embezzlement of property and/or breach

38

of fiduciary duty" corresponded to the cause of action for embezzlement/theft alleged in her first amended petition and included no additional allegations.

Her "first cause of action for breach of fiduciary duty" corresponded to the breach of fiduciary duty claim raised in her first amended petition. Laurel still alleged that her sisters breached their fiduciary duties to her by failing to conserve and pay her funds "to only those entitled to receive it," failing to keep her funds in a separate and identifiable account, and failing to make an accurate accounting. However, Laurel also alleged:

> The failure of [her sisters] to complete their services in an honest and forthright manner resulted in damage to Plaintiff, Laurel Wendt, for which Plaintiff, Laurel Wendt, is entitled to receive actual damages not subject to actual calculation at this time due to limited discovery but believed to be in excess of $100,000 as actual and exemplary damages for using the funds of [the Partnership] to fund [her sisters'] 2022 rice crop applicable to funds advanced for Wendt Farms LLC [her sisters' new entity] and the Stasney entity used for a rice growing joint enterprise.

This cause of action in Laurel's first amended petition had not included any allegations related to the 2022 rice crop or an alleged joint venture between Laurel's sisters and Stasney.

In Laurel's "second cause of action for breach of fiduciary duty," she alleged that her sisters failed to "exercise a high degree of care to conserve and renew" the Unitrust and Darst Leases. She also alleged that her sisters agreed with Stasney "that

39

they would not withhold water for the rice crop" to facilitate Stasney's rice farming operations on the former Darst Lease. She further alleged:

> For 2023, Stasney has entered into a joint venture with Wendt Farms LLC (owned by [Laurel's sisters]) and [the Partnership] has made a lucrative contract with Wendt Farms LLC to furnish water and use its above ground facilities for 2023 and future years. This agreement is self dealing since [Laurel's sisters] are the managers of [the Partnership] and owners of Wendt Farms LLC.

As damages, Laurel sought over $100,000 in actual and exemplary damages "for using the funds and assets of [the Partnership] to fund [the sisters'] 2023 and subsequent rice crops on the former Darst lease property and the former Unitrust lease property and the Stasney entity used for a rice growing joint enterprise."

Finally, Laurel asserted a "cause of action for embezzlement/theft." This claim was substantially similar to her claim for "theft/embezzlement of property and/or breach of fiduciary duty," but it also contained an allegation that Laurel's sisters "used the funds of [the Partnership] to finance their 2022 rice crop grown in a Joint [Venture with] their water master Frank Stasney." Laurel sought over $600,000 in actual and exemplary damages. She alleged that exemplary damages were proper because her sisters had "by theft, embezzled funds as above described owned by [the Partnership] which they individually jointly managed to the exclusion of [Laurel] and 20% of such funds owed to [Laurel] as a partnership distribution in the years in which the funds were wrongfully used."

40

### 3.    Analysis

We agree with Laurel that her second amended petition raised new factual allegations and claims that were not raised in her first amended petition and were not addressed in her sisters' summary judgment motion.

In their summary judgment motion, Evalyn, Amilee, and Jackie argued that res judicata barred Laurel's claims because her claims could have been—and were—raised in the prior Fort Bend County suit, and her Harris County suit was an improper collateral attack on the Fort Bend County judgment. The summary judgment motion included a claim-by-claim comparison of Laurel's allegations in the first amended petition to allegations she had made in various filings during the pendency of the Fort Bend County suit. For example, with respect to her breach of fiduciary duty claim, she had alleged in a March 2021 counterclaim that her sisters had engaged in actions that financially benefitted them to Laurel's disadvantage and that they had used Partnership funds to pay their attorney's fees. Evalyn, Amilee, and Jackie also argued that it was clear that Laurel's allegations in her theft/embezzlement claim "referr[ed] to monies paid to [their] counsel out of EAJL's partnership funds," an issue that Laurel knew about during the prior proceeding.

Evalyn, Amilee, and Jackie argued that summary judgment was proper on res judicata grounds because Laurel's claims were based on: (1) her argument that her sisters "should have withdrawn their claims entitling them to attorney's fees based

41

on the language of the MSA"; or (2) her argument that the Partnership "should not have paid any of [her sisters'] attorney's fees or expenses" in the Fort Bend County suit. Laurel's second amended petition, however, includes breach of fiduciary duty and embezzlement/theft claims that have a different factual basis: her sisters' alleged partnering with Stasney and other lessees to form a joint venture to conduct rice growing operations without Laurel's involvement. These new claims do not "essentially reiterate" previously pleaded theories of liability, such that a new or amended summary judgment motion is not necessary to address these claims. *See id.* at 598.

Laurel's new claims were not litigated in the Fort Bend County suit. Nor could they have been, as they relate to allegations involving the 2022 and 2023 rice crops, which arose after the Fort Bend County court entered judgment in March 2022. Evalyn, Amilee, and Jackie therefore have not established that Laurel's new claims could have been litigated in the Fort Bend County suit, such that res judicata applies to bar trial of the claims in the Harris County suit. *See Eagle Oil & Gas*, 619 S.W.3d at 705 (stating that res judicata "bars lawsuits that arise out of the same subject matter as a prior suit when, with the use of diligence, that subject matter could have been litigated in the prior suit"); *see also Silver Gryphon*, 529 S.W.3d at 598 (stating that new, amended, or supplemental summary judgment motion is not necessary in response to amended petition if original motion is broad enough to encompass newly

42

asserted claims). Because Evalyn, Amilee, and Jackie have not "conclusively proved or disproved a matter . . . that would also preclude the unaddressed claim[s] as a matter of law," we conclude that summary judgment on Laurel's breach of fiduciary duty and embezzlement/theft claims—to the extent that these claims concern the 2022 and 2023 rice crops—was improper. *See Wilson*, 305 S.W.3d at 73; *see also Silver Gryphon*, 529 S.W.3d at 598 (stating that new or amended summary judgment motion is not necessary when ground asserted in motion conclusively negates common element of previous and newly amended theories of liability).

Evalyn, Amilee, and Jackie argue that even if the trial court erred by granting summary judgment on Laurel's new claims, any error was harmless because Laurel asserted claims for which she is not entitled to recovery. They point out that the Partnership is not a party to the underlying proceeding. Laurel alleged that she was owed damages because her sisters allegedly embezzled funds owned by the Partnership, but Laurel brought her claims in her individual capacity, not "as a derivative action, or as an interest-holder in" the Partnership. They argue that because Laurel cannot recover on her claims in the capacity in which she filed suit, her claims are precluded as a matter of law, and the trial court did not reversibly err by dismissing these claims.

We disagree. The Texas Supreme Court has stated that error in granting summary judgment on a cause of action not expressly presented by written motion

43

is harmless "when the omitted cause of action is precluded as a matter of law *by other grounds raised in the case*." *See G&H Towing*, 347 S.W.3d at 297–98 (emphasis added). *G&H Towing* involved negligent entrustment claims asserted directly against an employee's co-worker and against his employer based on vicarious liability. *Id.* at 295. The summary judgment motions addressed the co-worker's direct liability but did not address the employer's vicarious liability. *Id.* Ultimately, the Texas Supreme Court concluded that the trial court's erroneous granting of summary judgment in favor of the employer was harmless because the employer's vicarious liability on the negligent entrustment claim was derivative of the co-worker's direct liability, and, as a matter of law, the co-worker was not liable for negligent entrustment. *Id.* at 298. Therefore, the employer could not be liable "because its agent did not commit the tort." *Id.*

*G&H Towing* is distinguishable from this case. Although the company's vicarious liability for the co-worker's alleged negligent entrustment was not raised in the summary judgment motion, the co-worker's direct liability for negligent entrustment *was* raised, and the summary judgment ruling in favor of the co-worker on this claim was affirmed and became final. *Id.* at 296. Evalyn, Amilee, and Jackie argue that Laurel is not entitled to recover on her breach of fiduciary duty and embezzlement/theft claims because she did not sue in a derivative capacity, and therefore her claims are "precluded as a matter of law" and any error by the trial

court in granting summary judgment on these claims is harmless. However, even if Evalyn, Amilee, and Jackie are correct that Laurel cannot recover on those claims in the capacity in which she sued, they did not raise that argument in the trial court as a ground for summary judgment. This was, therefore, not an "other ground[] raised in the case." *See id.* at 297–98.

We hold that the trial court erred to the extent that it granted summary judgment on Laurel's breach of fiduciary duty and embezzlement/theft claims based on allegations relating to the 2022 and 2023 rice crops. *See id.* at 297 ("Granting a summary judgment on a claim not addressed in the summary judgment motion therefore is, as a general rule, reversible error."); *Wilson*, 305 S.W.3d at 73 ("[T]his Court has always required a very tight fit between what was proved or disproved in the motion and what elements the unaddressed claim, as it was alleged, required: otherwise, the exception could swallow the rule.").

We sustain Laurel's second issue.

## Conclusion

We reverse the portion of the trial court's judgment granting summary judgment in favor of Evalyn, Amilee, and Jackie on Laurel's breach of fiduciary duty claims and embezzlement/theft claims to the extent those claims are based on allegations relating to the 2022 and 2023 rice crops. We remand these claims to the

trial court for further proceedings. We affirm the remainder of the trial court's judgment.


        April L. Farris
        Justice

Panel consists of Chief Justice Adams and Justices Guerra and Farris.